CASE. 87—ACTION AGAINST THE WASHINGTON LIFE INSURANCE CO. FOR A PAID-UP POLICY—FEB. 19.

# Washington Life Insurance Co. v. Miles, &c.

APPEAL FROM FRANKLIN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS. AFFIRMED.

LIFE INSURANCE—RIGHT TO PAID-UP POLICY—DELAY IN MAKING APPLICATION.

Held:   Where a policy provides that the insured shall, upon the lapse of the policy for non-payment of any premium, be entitled to a paid-up policy, provided he applies therefor and surrenders the original policy within six months after such lapse, the insured does not forfeit his right to a paid-up policy for failing to make demand within six months after the lapse of the original policy, but is entitled thereto if he makes demand at any time within five years after the lapse of the original policy, time not being of the essence of the contract; and this is true though the company after the expiration of six months, distributed the net reserve to continuing policy holders.

C. P. CHENAULT, HAZELRIGG & CHENAULT AND GRUBBS & GRUBBS, FOR APPELLANT.

This is an appeal from a judgment of the Franklin circuit court at its September term, 1899, under which appellant, the Washington Life Insurance Co., is directed to issue to appellee, Samuel I. Miles, for the benefit of his sister, Alma Miles, a non-participating paid-up policy for $240.

The contract contemplated that after three complete annual premiums had been paid, if the policy should lapse by reason of non-payment of premiums, the company would, upon surrender of the policy upon demand, within six months after the lapse issue a non-participating paid-up policy for such sum, as the reserve on the policy, at the time of lapse, will purchase as a single premium at the company's rates.

## POINTS AND AUTHORITIES.

1. In a suit to compel the specific performance of a contract, performance will be enforced within a reasonable time, that is, any time before the condition of the parties has materially changed or the rights of third parties have intervened, but after this the party in fault will be estopped from demanding performance.    Clark on Contracts, p. 596; 2 Story. Equity, sec. 776; Collins v. Park, 93 Ky., 6; U. S. v. Alexandria, 19 Fed., 612; Waterman on Specific Performance, sec. 420; Pomeroy Equity, sec. 1408; Bispham's Equity, sec. 392; Cocanougher v. Green, 93 Ky., 579; Tapp v. Nock, 89 Ky., 414; Smith v. Cansler, 83 Ky., 373; Woodson's Admx. v. Scott, 1 Dana, 470; Logan v. Bull, 78 Ky., 619.

2. In a suit against a mutual life insurance company to compel issuance of a paid-up policy, even if it be held that time is not of the essence of the contract, yet the above doctrine applies to this as well as in other suits for specific performance.

3. The right to a paid-up policy does not depend on any doctrine of equity, but must depend upon the contract, charter, or statute, and a mutual company has no right as against other members to grant a paid-up policy after time fixed for distribution by the charter has arrived and a distribution has been made.

4. "If a party is guilty of laches or unreasonable delay in the enforcement of his rights, he thereby forfeits his claim to equitable relief."   2 Herman on Estoppel, sec. 1221; Nappoch v. Jones, 20 Oregon, 421; 23 Am. St. Rep., 145; Galliher v. Caldwell, 145 U. S., 368; Wallums v. Horsley, 93 Ky., 582.

5. Appellant is a mutual insurance company distributing profits annually to its policy-holders, and must have a certain basis

Washington Life Insurance Co. v. Miles, &c.

on which to determine the amount due them, and if by reason of the laches of policy-holders the appellant has become unable to perform its agreement the performance will be more onerous, and a court of equity will deny relief, or grant relief upon equitable principles.

Montgomery v. Phoenix Mutual, 14 Bush, 51; Johnson v. Southern Mutual, 79 Ky., 407; Southern Mutual v. Montague, 84 Ky., 663; Hexter v. U. S. Life, 91 Ky., 362; Northwestern Mutual v. Barbour, 92 Ky., 434; Northwestern Mutual v. Lowry, 14 Ky. Law Rep., 602; Mutual Life v. Jarboe, 102 Ky., 80; Manhattan Life v. Patterson, 22 Ky. Law Rep., 1287; People v. Widows' & Orphans' Benefit Life, 15 Hull, Supreme Court Reports, p. 8; Attorney General v. The Continental, 98 N. Y., 80.

6. The close of the fiscal year within which the right matures is a reasonable time within which to require delinquent policy-holders to present their demands for paid-up insurance. Terrell v. Weymouth, 37 Am. St. Rep., 94; 32 Fla., 255; Pomeroy Equity, sec. 801; Nappoch v. Jones, 23 Am. St., 145; Clark on Contracts, p. 596.

7. Where by contract a defaulting policy-holder in a mutual insurance company is given six months within which to surrender the original policy and accept a paid-up non-participating policy, as time is of the essence of the contract, such right must be exercised in the contract time, and then it ceases, and the company is thereafter justified in dealing with such liability as having ceased.

Straube v. Pacific Mut., 56 Pac., 564; Mayer, Admx., v. Manhattan, 114, Ind., 139; Cravens v. N. Y. Life, 148 Mo., 583; Hudson v. Knickerbocker Life, 28 N. Y. Equity, 67; Smith v. National Life, 103 Pa., 177; Scherer v. Manhattan Life, 20 Fed., 586; Knapp v. Homeopathic Life, 117 U. S., 411; Johnson v. New York Life, 78 N. W., 905; Hawthorne v. Brooklyn Life, 5 Mo. App., 73 McLaughlin v. Equitable, 38 Neb., 725; Universal Life v. Whitehead, 58 Miss.; Hexter v. U. S. Life, 91 Ky., 356; Northwestern v. Barbour, 92 Ky., 427; Wilcox v. The Equitable, 55 Appellate Division Reports, 529.

GUY H. BRIGGS AND W. H. JULIAN, FOR APPELLEE.

(No brief for appellee.)

OPINION OF THE COURT BY CHIEF JUSTICE GUFFY—AFFIRMING.

The petition in this case shows that the appellant issued to appellee, Samuel I. Miles, a policy of life insurance in the sum of $5,000, June, 16, 1890. This policy was on what

is termed the "twenty-year life survivorship distribution plan," the insurance being for the benefit of Alma Miles, sister to the insured. The premiums to be paid were $27.10, payable quarterly, which payments were made by plaintiff for three years. It is further alleged as follows: "Plaintiff says that by the terms and conditions of said policy of life insurance the defendant agreed and stipulated that, if the said policy should lapse and become forfeited for the nonpayment of any premium upon which the same shall fall due after the payment of three annual premiums, the said defendant company agreed, upon demand of said insured plaintiff, to issue to said plaintiff a nonparticipating paid-up policy for such sum as the reserve on such policy at the time of such lapse and forfeiture by such non-payment will purchase as a single premium at the company's rates. Plaintiff says that he has so paid to the said defendant three annual premiums, as hereinbefore set out, and that on the 16th day of December 1893, the said policy did lapse and become forfeited for the nonpayment of a premium due upon that said date. Plaintiff says that in accordance with the conditions hereinbefore set out he did demand of said defendant the issual of a paid-up policy as aforesaid, but that defendant declined and refused to issue the policy aforesaid, and is now declining and refusing to issue same. Plaintiff says that at the time of the said lapse and forfeiture according to the published rates of the said defendant company there was and is now due him from the said defendant a paid-up nonparticipating policy of life insurance for $750, which said defendant refuses and declines to issue to said plaintiff.

So much of the answer of defendant as is deemed material reads as follows:

"The defendant company admits that it did, on the 16th

day of June, 1890, execute and deliver to plaintiff, Samuel
I. Miles, its policy of insurance for $5,000, No. 69,066, filed
with the petition herein, and the contract of insurance be-
tween plaintiffs and defendant is set forth in said policy,
and not otherwise. Defendant admits that said policy was
so issued for the benefit of Alma Miles, sister of the insured,
her coplaintiff; and admits that plaintiffs have paid three
full annual premiums on said policy of insurance, and ad-
mits that on December 16, 1893, said policy did become
lapsed and forfeited for nonpayment of premiums. For fur-
ther answer the defendant company says that said policy
and contract of insurance between plaintiffs and defendant
contained and does now contain, the following stipulations
and conditions, viz: '(3) Notwithstanding this policy shall
lapse and become forfeited for nonpayment of any pre-
mium upon the day upon which the same shall fall due ac-
cording to the terms thereof, as hereinbefore contained,
yet, after the payment of three annual premiums, and up-
on demand made with surrender of this policy within six
months after such lapse by such nonpayment, this com-
pany will issue a nonparticipating paid-up policy for such
sum as the reserve upon this policy at the time of such
lapse and forfeiture by such nonpayment, as provided by
chapter 347 of the Laws of New York of 1879, will purchase
as a single premium as the company's published rates, and
the paid-up insurance purchased by the surrender of this
policy shall be payable at the same times and under the
same conditions, except as to payment of premiums and the
guaranty of the full reserve as a cash value as the original
policy; provided and agreed however, that any voluntary ap-
plication by the company of such dividends as hereinafter
mentioned shall, as relates to action under chapter 347
of the Laws of New York, 1879, be taken into consideration

in computing the amount of the reserve thereunder.' De-fendant, further answering, says that the law of New York referred to in said stipulation and agreement, is and was in words and figures as follows, to-wit: 'Chapter 347. Laws of New York, 1879. An act to protect the rights of policy holders in life insurance companies. Passed May 21st, 1879. The people of the State of New York represented in senate and assembly, do enact as follows: (1) Whenever any policy of life insurance hereafter issued by any company organized or incorporated under the laws of this State after being in force three full years, shall by its terms lapse or become forfeited for the nonpayment of any premium or loan made in cash on the policy as security, or of any interest on such note or loan, unless the provisions of this act are waived in the application and notice of such waiver written or printed in red ink on the margin of the face of the policy when issued, the reserve on such policy including dividends, additions, calculated at the date of the failure to make any of the payments above described according to the American Experience Table of Mortality and with interest at the rate of 4½ per cent. per annum, after deducting any indebtedness of the insured on account of any annual, semiannual or quarterly premium then due, or any loan made in cash on such policy, evidence of which is acknowledged by the insured in writing, shall on demand made with surrender of the policy within six months after such lapse be taken as a single premium of life insurance at the published rates of the company at the time the policy was issued and shall be applied as shall have been agreed in the application and policy, either to continue the insurance of the policy in force at its full amount so long as such single premium will purchase temporary insurance for that amount, at the age of the insured at the time of lapse or

purchase upon the same life at the same age paid up in-
surance payable at the time under the same conditions, ex-
cept as to payment of premiums as the original policy; pro-
vided that if no such agreement be expressed in the appli-
cation and policy the said single premiums may be applied
in either of the modes above specified, at the option of the
owner of the policy, notice of such option to be contained
in the demand hereinbefore required to be made to pre-
vent the forfeiture of the policy.   Provided, also, that the
net value of the insurance given for such single premium
under this section computed by the standard of this State
shall in no case be less than two-thirds of the entire re-
serve after deducting the indebtedness as specified; but
such insurance shall not participate in the profits of the
company.'   Defendant says that said law was printed in
said policy filed herein, and made part hereof, and that de-
fendant company and plaintiffs in issuing and accepting
said policy contracted with reference to said law, and agreed
that same should become and was a part of said contract of
insurance.   Plaintiffs, in accepting said policy, did so upon
the conditions and agreements printed by the company
on the inside of the policy, and such conditions and agree-
ments were referred to and accepted by plaintiffs and the
assured as part of the said contract of insurance, and it is
and was agreed that such conditions and agreements should
and shall have the same force and effect as if printed in
full over the signature of the parties to said contract.   De-
fendant further says that the law referred to and stated
herein was by the people of New York represented in Senate
and assembly duly enacted for the benefit and to protect
the rights of policy holders in life insurance companies, and
said law was duly signed and sealed by proper authority,
whereby it was placed in full force and effect, and was at the

time of the making of the contract filed herein and is now the law of New York, and in full force and effect. Defendant further says that by the express terms, conditions, and agreements of said contract of insurance, as more particularly set out hereinbefore, it was provided and agreed between plaintiffs and defendant that no nonparticipating paid-up policy of insurance should be issued unless demand therefor was made within six months, with surrender of this policy, No. 69,066, from the time default was made in payment of premiums and from time policy lapsed and became forfeited for reason of nonpayment of the premium when due; and defendant says that six months was and is a reasonable time within which to make said demand and surrender of policy aforesaid. Defendant says that plaintiff did make such default and said policy did lapse and become forfeited for nonpayment of premiums as aforesaid, on the 16th day of December, 1893, and plaintiffs did not demand of defendant such paid-up policy or any policy within six months from the date of default and lapse as hereinbefore mentioned, and did not within said time offer to surrender said policy No. 69,066, and plaintiffs did not until in the month of December, 1897, four years after said default and lapse, make demand for such paid-up policy. Defendant pleads and relies upon said default in payment of premiums and plaintiffs' failure to demand said paid up nonparticipating policy, with said surrender, within six months thereafter, as provided by the terms and conditions and agreements of said policy of life insurance and the laws of New York, in bar of plaintiffs' right to relief sought."

"(3) The defendant, Washington Life Insurance Company, for further answer, says: It is a corporation created under and by virtue of the laws of the State of New York for the

purpose of insuring the lives of its members upon what is
known as 'the mutual plan' of insurance, and defendant says
its insurance business has always been, was at the time of
issuing of the policy filed herein, ever since then, and is
now conducted on the principle of giving policy holders
interest in the profits of the company, as is required by its
charter, a copy of which is filed herewith and made part
thereof, marked 'Charter;' and defendant says section 2
of article 3 of said charter reads as follows: 'Section 2, art.
3, (amended 1863 to read as follows):   The insurance busi-
ness of the company shall be conducted upon the principle
of giving to policy holders an interest in the profits of the
company as hereinafter provided, unless otherwise express-
ly agreed between the company and the insured.'   Defend-
ant says that its policy holders have at all times shared
in the profits of the company as required by its charter,
and said defendant has never otherwise expressly agreed
with its policy holders at any time, but said policy holders
have at all times shared in any and all profits of the com-
pany to which they were entitled under the charter of said
defendant company and under its by-laws, and said profits
have at all times been apportioned among such policy hold-
ers and paid or applied in the manner and at such times as
the board of directors determined from time, which said
board of directors had a right to so determine under the
company's charter under the laws of the State of New York.
Defendant says that section 2 of article 7 of said charter
is in words and figures as follows, to-wit: 'Section 2 (amend-
ed 1863 to read as follows):   The holders of said capital
stock shall be entitled to a semi-annual net dividend out of
the earnings of the company of (but not exceeding) three
and one half per cent. on the amount of stock held by them
respectively, payable on and after the first day of February

and August without deduction; and said payments commenc-
ing with the first day of August, 1863.' Defendant says
section 1, art. 8, of said charter is in words and figures as
follows, to-wit: 'Section 1 (amended 1863 to read as fol-
lows: The company within sixty days next after the ex-
piration of five years from the first day of January, 1861,
and within the first sixty days next after the expiration
of every subsequent period of five years, shall cause a gen-
eral statement to be made of the affairs of the company,
which shall then exhibit the amount of the then remaining
net profits of the company after allowing a sufficient amount
to reinsure all outstanding risks and to cover all other ob-
ligations. The whole amount of the net profits so ascer-
tained as above provided shall be credited to the account
of the policy holders entitled to participate in the profits,
which shall be apportioned among them and paid or applied
in such manner and at such time as the board of directors
may deem equitable and from time to time provided.' De-
fendant says that out of the premiums paid by plaintiffs
on said policy this defendant retained and held on hand
until 1st day of July, 1894, which was and is three years
and six months from the date of said policy, the sum of
$94.10, which was the net reserve derived from said policy,
which was the full extent of plaintiffs' interest, if any they
had, for life insurance in this defendant mutual life insur-
ance company by reason of said policy No. 69,066. Defend-
ant says that all other sums paid on said policy, and all
other policies issued by said company then in existence and
force, have long since been distributed and disposed of
among its then outstanding policy holders according to the
terms of its charter and as required by the laws of the
State of New York, after having first paid therefrom the
necessary costs and expenses of conducting the business of

said defendant company. Defendant says by reason of
plaintiffs' failure to pay premiums on said policy No. 69,066
when due, and their failure to deliver up to defendant the
said policy within six months as hereinbefore more specifical-
ly set out, said plaintiffs forfeited all right and interest in
and to said net reserve derived from premiums paid on said
policy and all other policies outstanding against said com-
pany, and plaintiffs' said interest in said net reserve was
so forfeited and became the assets of the existing and con-
tinuing policy holders of said company, and has long since
said lapse and forfeiture, with the knowledge and consent
of plaintiffs, been credited and paid to them, the said exist-
ing and continuing policy holders, after first having paid
costs and expense of carrying on the business of said de-
fendant company, according to and as required by defend-
ant's charter and by the laws of New York; and defendant
says said net reserve derived from said policy No. 69,066
has been so credited as the assets of the continuing policy
holders of defendant company in all subsequent declara-
tions and distributions of surplus and profits which said
company has declared and distributed among its members
since plaintiffs ceased to be members thereof. Defendant
says that sixty days after the 1st of January, 1896, as re-
quired by its charter (section 1, art. 8), it made a general
statement of its business and affairs, which exhibited the
then remaining net profits of the company after allowing
a sufficient amount to insure all outstanding risks and to
cover all obligations, and the whole amount of net profits
was ascertained and credited to the existing and continuing
policy holders, and was apportioned among them as required
by defendant's charter at which time plaintiffs were not
members of the defendant company, their policy having

long prior thereto lapsed and become forfeited as herein-
before specifically set out. Defendant says that it was the
duty of plaintiffs to surrender said policy with a demand for
the paid-up policy in lieu thereof, if they intended to require
defendant to issue paid-up policy, within a reasonable time
from time of default as hereinbefore set out; but defendant
says plaintiffs did not make such demand, coupled with sur-
render of policy, or at all, within a reasonable time after
the lapse of said policy for nonpayment of premiums as
hereinbefore more specifically set out. Defendant says
that since the lapse of said policy and filing of petition here-
in the rights and interest of continuing policy holders have
intervened, and to now require defendant to issue said paid-
up policy would plunge its business in an unsettled and un-
certain condition, would be a fraud and hardship upon its
continuing members. Defendant says that said policy
ceased to be a liability against said defendant on the —
day of ——, 189--, and prior thereto, and has never since
that time been a liability against defendant, and is not
now a liability against defendant company, by reason of
plaintiffs' failure to demand a paid up policy and surrender
said policy No. 69,066 within a reasonable time after failure
to pay premiums due and after lapse of said policy. De-
fendant says six months was and is a reasonable time within
which to make such demands and surrender, and defendant
says that by the negligence, laches, and failure to perform
the condition of said policy and the conditions imposed by
the law copied herein plaintiffs are estopped to maintain
this action, and defendant pleads such negligence, laches
and failure as a bar to prosecution of this action and relief
sought.

"(4) Defendant says, if it is liable to plaintiffs for a paid-
up nonparticipating policy in any sum, which it denies, it

is only liable for nonparticipating paid-up policy for such sum as the reserve, $94.10, on said policy at the time of lapse and forfeiture by reason of nonpayment of premiums, will purchase as a single premium at the company's published rates, and defendant says that said reserve would, at company's published rates, purchase only a paid-up nonparticipating policy for $250, and no more, when ascertained in the manner set out in the policy No. 69,066, which was and is the manner agreed to by and between the plaintiff and defendant for determining the amount of such paid-up insurance. Wherefore defendant, having fully answered, prays that the petition herein be dismissed, that it have judgment for costs, and it prays for all proper and equitable relief."

It will be seen from the foregoing that the stipulations of the policy require the insured to apply for the paid-up policy in question, and required the demand, accompanied with a surrender of the policy, to be made within six months from the time at which the policy had lapsed on account of the nonpayment of premiums. The court, however, upon final submission of the cause, adjudged that the plaintiff should recover of the defendant, the appellant, a paid-up nonparticipating policy of life insurance for $240 in said company for the benefit of the plaintiff Alma Miles, and it was further adjudged that the defendant, now appellant, issue to him, the plaintiff, the said policy of insurance aforesaid; and it was further adjudged that plaintiff have judgment against the defendant for the costs; to all of which the defendant excepted, and prayed an appeal to this court, which was granted.

Numerous authorities are cited by both appellant and appellees. It is the contention of appellee that time is not of the essence of the contract, and that under the stipula-

tions of the policy the appellees had paid for and were entitled to a paid-up policy as stipulated for in the policy of insurance. In Montgomery v. Insurance Co., 14 Bush, 51, it appears that a policy of life insurance was issued with the stipulation that, after certain payments had been made, the insured, within a certain specified time, might surrender the policy, and obtain a paid-up policy for a certain amount. The question in the case involved was the right of the insured to a paid-up policy although demand was not made within the time specified in the policy, and this court said: "Time is not generally of the essence of contracts. Story, Eq., section 776. It may be so when the contract is executory on both sides, or when the nature of the transaction or stipulation of the parties shows it was so intended by them; but, when the defendant has received the entire consideration for performance on his part, and has no other defense except that the plaintiff did not come within the stipulated time to demand performance, we are not acquainted with any authority or legal principle upon which such a defense can be upheld in a court of equity. If, for any reason, the defendant has become unable to perform his agreement, or performance would be more difficult or onerous at the time of the demand than it would have been at the time stipulated, there might be plausibility in such a defense, and a court of equity would no doubt either deny all relief to the plaintiff or grant relief upon terms that would compensate the defendant for the additional burden resulting from the plaintiff's delay; but nothing of the kind is pretended in this case. The proposition upon which this branch of the company's defense rests is this, and nothing more: It is admitted that the assured paid for a paid-up policy for $4,000, and that, if the old policy had been surrendered at

any time between September 5, 1872, and September 5, 1873, the company would have been bound to issue a new policy for that sum; and because the old policy was not surrendered within that time the assured has lost the benefit of $4,000 paid-up insurance." In Insurance Co. v. Jarboe, 102 Ky., 80 (19 R., 1501) 42 S. W., 1097, 80 Am. St. Rep., 343), the syllabus reads: "Under the provision of a policy of life insurance that, 'after three full annual payments have been paid upon this policy, the company will, upon the legal surrender thereof before default in payment of any premiums, or within six months thereafter, issue a nonparticipating policy for paid-up insurance, payable as herein provided, for the proportion of the amount of this policy which number of full years' premium bears to the total number required, time is not of the essence of the contract, and the insured does not forfeit his right to such paid-up policy by a failure to demand it or to surrender the original policy within six months after default. The original policy being dead, the insured is not required to surrender it before bringing suit for the paid-up policy." The court, in discussing the question under consideration, said: "It will be seen from the policy in the case at bar that it was distinctly provided that, if the assured paid three annual payments, he was then entitled to a paid-up policy in proportion to the premium paid, provided he surrendered the policy before he made default or within six months after default in the payment of premiums. It is clear under the contract that the three payments not only continued the policy in force for the time being, but also paid, at the election of the assured, for a paid-up policy in proportion to the premiums paid. The contract has none of the elements of an offer to sell, but it is a clear case in which the assured has bought and paid for a certain thing. It has

a stipulation, in effect, that he shall demand it within six months after his abandonment of the other benefits acquired under the same contract. The only defense presented in this case is the simple fact that the appellee had not, within six months after the failure to pay the premium due, surrendered the original policy and demanded the issuing of the other. It is not pretended that it was any more difficult or expensive for the appellant to issue a paid-up policy when demanded than if it had been demanded at the end of the six months, nor can it be of any pecuniary consequence to defendant whether the forfeited policy was delivered up before the institution of this suit. The original policy, being dead and of no effect, could be of no value to any person." It is further stated in the opinion as follows: "To the extent, if any, that the principles announced in the decisions in Insurance Co. v. Barbour, 92 Ky., 427 (16 R., 619) (17 S. W., 796, 15 L. R. A., 449), and Hexter v. Insurance Co., 91 Ky., 356 (12 R., 921) (15 S. W., 863), conflict with the doctrine announced in Montgomery v. Insurance Co., they are overruled." The same doctrine was affirmed in Insurance Co. v. Patterson (109 Ky., 624) (22 R., 1282) (60 S. W., 383, 53 L. R. A., 378).

From the foregoing it will be seen that the settled rule of this State is that time is not considered of the essence of the contract in such insurance policies as the one under consideration, and that the mere failure to surrender the policy and demand the issuance of the paid-up policy within the time prescribed in the policy does not defeat the right of the insured to obtain the paid-up policy stipulated for in the contract of insurance. It is, however, insisted for appellant that, under the principles of the decisions heretofore referred to, the appellant in this case comes within the rule laid down in the decision supra, to-wit: That the

conditions of the parties had changed, or that performance
would be more onerous than if required within the specified
time; and it is claimed that the appellant in this case had
distributed the supposed surplus accruing from the forfeit-
ed policy in question, and that the laws of New York, under
whose laws the appellant was authorized to do business,
required it to distribute such surplus amongst the policy
holders, and that, therefore, to be required now to issue
the paid-up policy demanded would impose upon the policy
holders or others a loss or some deprivation of rights or
interests that would not have occurred if the demand had
been made within six months from the time the policy
lapsed. We do not think there is any force in this argument.
In the first place, it may be said that the company should
be presumed to know the law, and should not report the
proceeds of the lapsed policy as a surplus until after the
time in which it would be exempt from issuing the paid-
up policy. Moreover, the policy holders must be presumed,
when they receive policies of insurance in the company to
assume whatever risks that legally attend or may result
from the issuance of their policies. In addition to this,
it may be said that there is nothing in this case to show
that the reserve fund of appellant is not amply sufficient
to equalize and protect the interests of all the policy hold-
ers in said company. It is contended for the appellant
that under the rules and customs of the company, on the
1st of January succeeding the expiration of the time lapsed
policy holders can apply for a paid-up policy, the surplus is
distributed or disposed of, and therefore they should not
be required after that time to issue paid up policies. If
this be true as a matter of law, they might adopt any other
rule, and in 10 or 20 days after the termination of six

months make distribution of the surplus so acquired, and thus always defeat the rules laid down in the cases supra.

The appellant earnestly insists that the courts should lay down some rule or some time at which the right to demand and receive a paid-up policy should terminate. Taking into consideration the nature of life insurance, and all the facts and circumstances involved therein,.we are of opinion that the insured should, within five years from the time he was entitled to demand a, paid-up policy, make such demand, or that his laches in so doing should bar his right to demand and receive the same.

For the reasons indicated, the judgment appealed from is affirmed.

Whole .court sitting.