SANDERSON v. POSTAL LIFE INS. CO. OF NEW YORK.

No. 1001.

Circuit Court of Appeals, Tenth Circuit.

Aug. 15, 1934.

Rehearing Denied Sept. 25, 1934.

Albert L. Vogl, of Denver, Colo. (Carle Whitehead and F. A. Wachob, both of Denver, Colo., on the brief), for appellant.

Arthur H. Laws, of Denver, Colo. (G. C. Bartels and Walter W. Blood, both of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

On September 13, 1932, appellant filed a bill in equity alleging that she is the beneficiary of a policy insuring the life of Charles

896

P. Allen who died on December 19, 1916; that Allen paid all the premiums thereon from April 15, 1898, up to, but not including, the one due April 15, 1915; that the policy, and applicable statutes, provide that upon default in the payment of premiums, the company became obligated to issue a paid-up policy for $6,034.44, such being the amount of paid-up insurance purchasable with the accumulated reserves of the policy. The bill further alleges that the company has failed to issue such paid-up policy, although demand therefor was made after appellant learned of the existence of the policy on May 21, 1932. The prayer is for a decree requiring the company to issue such paid-up policy and to account as trustee for the principal sum thereof with eight per cent interest from December 19, 1916.

■ Appellee moved to dismiss the bill on the grounds (1) that it does not state facts sufficient to constitute a cause of action in equity, and (2) that the cause of action is barred by the statute of limitations of Colorado. The trial court dismissed the bill upon the second ground. This appeal is from that order. The question before this court is whether the bill was rightly dismissed, and not whether a correct reason was assigned therefor.[1]

Counsel agree that, upon default in payment of premiums, the owner is entitled to a new paid-up policy of insurance, and that the issuance of such a new policy is necessary before an action can be maintained at law by the beneficiary. Our examination of the contract has led us to a different conclusion. Since that question underlies this equitable action, we proceed first to its examination.

The policy provides that, upon nonpayment of premiums, "the owner will be entitled, on legal surrender of this policy within 30 days thereafter, to one of the methods of settlement provided in the table upon the third page hereof at the date of surrender, as follows:

"1. [Extended assurance for a term]; or

"2. Receive a Paid-up Life Policy for the amount specified in the said table [$5360]; or

"3. Receive the amount specified in the said table as the Cash Value of this Policy.

"Should no choice be made within said thirty days of the foregoing methods of settlement, the owner of this Policy will still be entitled to the surrender value in paid-up assurance, specified in the Statutes of the State of New York, Laws of 1892, chapter 690, article 2, Section 88."

■ The bill alleges that the policy contract was made in Colorado. Section 2223, Mills' Ann. Stats. of Colorado, 1891, was in effect when the contract was made. That statute was thus impressed upon the policy contract. In a rough sense it "became a part of the contract," although it does not need the consent of the contracting parties to give it vitality; it "molds the obligation of the contract into conformity with its provisions." Hanover Fire Ins. Co. v. Dallavo (C. C. A. 6) 274 F. 258, 265. See, too, dissenting opinion of Mr. Justice Cardozo in Coombes v. Getz, 285 U. S. 449, 52 S. Ct. 435, 76 L. Ed. 866. That statute provides that if there is default in payment of premiums after three years, "the company shall convert the same into a paid-up policy for as many dollars as the value of such policy will purchase, to be determined by the table of surrender values in use by such company at the time of the issue of policy, which shall be not less than the full net value of the policy per actuaries' experience table of mortality, four per cent. interest; Provided, That the application be made in writing for such paid-up policy by the assured within six months after default in the payment of premiums shall first have been made."

Article 2, § 88, c. 690, Laws of New York, 1892, referred to in the policy contract, provides that if a policy lapses after the third year, the reserves thereon, computed according to the American Experience Table of Mortality at four and one-half per cent interest, shall, on demand made with surrender of the policy within six months, be applied to purchase extended or paid-up insurance as agreed upon in the policy, or, failing such agreement, to purchase extended or paid-up insurance at the option of the owner of the policy, such option to be exercised in the demand made within six months.[2]

The bill affirmatively discloses that no demand for a paid-up policy was made by ap-

[1] Divide Creek Irr. Dist. v. Hollingsworth (C. C. A. 10) 72 F.(2d) 859 (decided July 28, 1934); City of St. Paul v. Certain Lands (C. C. A. 8) 48 F.(2d) 805; Brace v. Gauger-Korsmo Const. Co. (C. C. A. 8) 36 F.(2d) 661; City of Newark v. Mills (C. C. A. 3) 35 F.(2d) 110; Abernathy v. Oklahoma (C. C. A. 8) 31 F.(2d)

547, certiorari denied 280 U. S. 599, 50 S. Ct. 81, 74 L. Ed. 645; Lewis-Hall Iron Works v. Blair, 57 App. D. C. 364, 23 F. (2d) 972; Gideon v. Hinds (C. C. A. 2) 238 F. 140; Illinois Cent. R. Co. v. Nelson (C. C. A. 8) 212 F. 69.

[2] The policy was issued by the Provident Savings Life Assurance Society, a New

pellant until more than 17 years after lapse, for it alleges that appellant did not know of the existence of the policy until that date. No demand by the assured is alleged, although he lived 20 months after lapse. It is alleged that Allen made no election as provided by the policy, and that on March 7, 1917, the person then in possession of the policy notified the company of Allen's death, and liability was denied by the company.

■ Appellant has no rights under the specific options granted in the policy; those options expired 30 days after lapse, and the bill alleges that Allen failed to exercise them.

Nor has she any rights under the Colorado statute, for that statutory right is expressly conditioned upon a demand in writing made within six months after the default of April 15, 1915. No such demand is alleged. Appellant somewhat cautiously suggests that we excise the proviso for a demand in six months from the statute. We cannot take such liberties with the statute. When the legislature conferred upon the owner of this policy a right not contained in the agreement, it was within its power to impose conditions upon the right so conferred. One seeking to avail himself of a statutory right must abide the conditions upon which the right was granted. In Knapp v. Homeopathic Mutual Life Ins. Co., 117 U. S. 411, 6 S. Ct. 807, 29 L. Ed. 960, failure to demand a paid-up policy within the 90 days after default provided in the policy, was held to be fatal to recovery. The great weight of authority is in accord. Cooley's Briefs on Insurance, p. 3842, and Note to

Lenon v. Mutual Life Ins. Co. (80 Ark. 563, 98 S. W. 117) 8 L. R. A. (N. S.) 193.[3]

■ Appellant apparently contends that the 1892 New York statute is incorporated in the policy either by reference or ex proprio vigore. It is not incorporated therein by its own force because this is a Colorado contract (see Note 2) and because the 1892 law had been repealed four weeks before this contract was made. For reasons that shall presently be stated, we do not believe it is incorporated in the contract by reference. But were it otherwise, appellant could press no claim thereunder, for it, like the Colorado statute, requires a written demand within six months from lapse to bring the right to a paid-up policy into existence.

There is left for consideration the clause which concludes the paragraph of the policy granting the options in case of lapse. It reads:

"Should no choice be made within said thirty days of the foregoing methods of settlement, the owner of this Policy will still be entitled to the surrender value in paid-up assurance, specified in the Statutes of the State of New York, Laws of 1892, chapter 690, article 2, Section 88."

■ We are of the opinion that this sentence does not incorporate the New York statute, with its condition as to demand in the policy. It does not use the conventional language for that purpose. On the other hand, it specifically provides that in event the owner neglects to exercise either of the options

York corporation, and liability later assumed by appellee. When the policy was issued, chapter 85, Laws of New York, 1898, was in effect. Section 311 thereof provides that in event of default in payment of premiums for five years, the reserves thereon shall be computed and applied substantially as provided in the 1892 statute. We are not concerned with this statute, or the conflict between its provisions and those of the Colorado statute, for the New York statute has no application to a Colorado contract. Mutual Life Ins. Co. v. Cohen, 179 U. S. 262, 21 S. Ct. 106, 45 L. Ed. 181; Mutual Life Ins. Co. v. Hill, 193 U. S. 551, 24 S. Ct. 538, 48 L. Ed. 788; In re Ames (D. C. Mich.) 283 F. 465.

[3] No cases have been found where a time limitation imposed by statute has been ignored. The courts of Kentucky and Arkansas are apparently the only ones which have ignored a time limitation contained in the contract. Cases from those states hold

that an agreed time limit for demanding a paid-up policy is not of the essence of the contract, and that a demand made within any reasonable time is sufficient. Such cases, and those opposed, are collected in the note to Lenon v. Mutual Life Ins. Co. supra. In Washington Life Ins. Co. v. Miles, 112 Ky. 743, 66 S. W. 740, the court held that five years was a reasonable time within which to make the demand, and that decision has been repeatedly followed. Brotherhood of American Yeomen v. Graves, 234 Ky. 118, 27 S.W.(2d) 670. Where time is not of the essence of a contract, courts frequently decline to hold the parties rigidly to the precise day fixed, particularly if untoward circumstances contribute to a negligible delay; but the Supreme Court of the United States and the majority of other courts hold that to substitute five years for the six months which the parties have agreed upon, is to push the doctrine too far.

that he "will still be entitled to the surrender value in paid-up assurance." This right is not burdened by a condition that written demand be made in six months, and there is no justification for reading such a condition into it. The New York statute is referred to, not to bring over its condition as to demand, but to fix the amount of the paid-up assurance. The language is " * * * the surrender value in paid-up assurance, *specified* in the Statutes of the State of New York."

Nor does it require the issuance of a new paid-up policy to fix liability upon the company. The clause is self-executing. By its terms, the owner is entitled to paid-up assurance of the specified amount. There is a significant departure in the language used in this clause from that used in the preceding lines of the same paragraph. In those lines an option is granted the owner to "receive a paid-up life policy" for a certain amount "on legal surrender of this policy." It may be that under that option the company would not be liable until a new policy was issued. But where no option was exercised that language was departed from, and a quite different expression used, to wit, that the owner became entitled to "paid-up assurance." In Metropolitan Life Ins. Co. v. Smith (Ga. App.) 172 S. E. 654, a very similar clause was held to be automatic in its operation.

At most, the clause is ambiguous, and in that event, the ambiguity should be resolved in favor of the assured.[4] Another applicable rule is that ambiguous assurance contracts should be construed to avoid a forfeiture of the rights of the assured.[5] Both of these rules of construction support the interpretation we place upon the clause. Such interpretation imposes liability automatically upon the company for the paid-up assurance, avoids forfeiture of the reserve values in event no paid-up policy is issued, and avoids the necessity of an owner going to the needless expense of a suit to procure a paid-up policy before recovery thereon may be had. This clause is the forerunner of clauses found in modern policies that if the owner fails to exercise any option, the reserve is automat-

ically applied to the purchase of assurance. When the assured lapsed this policy, it carried a reserve of $3,830, which he was entitled to draw down in cash or in one of two kinds of assurance. Failing to exercise his option, the reserve should be, and we hold was, automatically applied to the purchase of paid-up assurance. If suit had been seasonably brought upon the death of the assured for the amount of paid-up assurance specified in the New York Statutes, certainly the company could not have successfully defended on the ground that no new policy had been issued or demanded. We are not unaware of the fact that, because of the peculiar circumstances of this case, it may be more favorable to this beneficiary, 17 years afterward, otherwise to construe this clause. But the true meaning of the policy is the same, whatever it is, with all policyholders and at all times. And to policyholders generally, and to this particular policyholder at the time of lapse and upon his death, the construction given is more favorable than the one suggested by appellant. That construction cannot be varied to meet the particular situation of one owner failing to take action for 17 years. It may also be observed that if a new policy is required, and a demand therefor a condition precedent to liability, such a demand must be made within a time which is reasonable under the circumstances, and that the courts adhering to that view have held that more than five years is an unreasonable time. (See Note 3.) Seventeen years elapsed here before a demand was made.

We conclude that, upon the facts alleged in the bill, the beneficiary was entitled to recover the amount of the paid-up assurance specified in the 1892 New York statute upon the death of the assured under the contract as written, and that the issuance of a new policy was not a condition precedent to such liability. There was therefore an adequate remedy at law. The adequacy of the legal remedy is not defeated by a naked allegation that appellee holds the proceeds of the policy in trust for the beneficiary. Liability on a policy of life insurance is a debt, and

---

[4] Stipcich v. Metropolitan Life Ins. Co., 277 U. S. 311, 48 S. Ct. 512, 72 L. Ed. 895; Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; Thompson v. Phenix Ins. Co., 136 U. S. 287, 10 S. Ct. 1019, 34 L. Ed. 408; Norwich Union Fire Ins. Soc. v. Cohn (C. C. A. 10) 68 F.(2d) 42; Chase v. Bus. Men's Assur. Co. (C. C. A. 10) 51 F.(2d) 34; Graham v. Busi-

ness Men's Assur. Co. (C. C. A. 10) 43 F.(2d) 673; Great Southern Life Ins. Co. v. Jones (C. C. A. 8) 35 F.(2d) 122.

[5] McMaster v. New York Life Ins. Co., 183 U. S. 25, 22 S. Ct. 10, 46 L. Ed. 64; Fidelity & Casualty Co. of New York v. Phelps (C. C. A. 4) 64 F.(2d) 233; Minn. Mut. Life Ins. Co. v. Marshall (C. C. A. 8) 29 F.(2d) 977.

the remedy at law is appropriate and adequate.

Whether such action at law is barred by any applicable statute of limitations, or whether the circumstance of a lost policy or the absence of appellee from the state tolls the statute, are questions not before us and upon which no opinion is expressed.

No cause of action in equity being stated in the bill, it is unnecessary to inquire whether the doctrine of laches would be a bar if a cause of action had been stated.

The decree dismissing the bill is Affirmed.

### On Motion to Modify Order.

PER CURIAM.

■ Appellant has now asked that the order of remand accord her the right to transfer the cause to the law docket and to recast her pleading in the court below. This request, while made rather late in the proceedings, is supported by the spirit of Equity Rule 22 (28 USCA § 723) and the decided cases. Universal Rim Co. v. General Motors Corp. (C. C. A. 6) 31 F.(2d) 969; Diamond Alkali Co. v. P. C. Tomson & Co. (C. C. A. 3) 35 F.(2d) 117; Pathe Exchange v. Dalke (C. C. A. 4) 49 F.(2d) 161; Central Florida Lumber Co. v. Taylor-Moore Syndicate (C. C. A. 5) 51 F.(2d) 1. The request is granted, and the cause remanded with permission to transfer the cause to the law docket, to file an amended complaint, and for such further proceedings as may follow.

■ Appellant also asks that this court now determine whether, on the facts pleaded in support of the equitable relief prayed for, a cause of action at law based on the same evidentiary facts would be barred by any applicable statute of limitations. If this court could conclude this litigation, with fairness to both sides and without remand, it would be very glad to do so. But it is apparent, from an examination of the entire record, that the bill was framed on the theory that a new policy, and a demand therefor, was a prerequisite to recovery at law, a theory we hold to be unsound. The bill is not framed to cover the case as we have found it to be, and this court is not the place to file an action at law, an answer setting up the statute of limitations, and a reply setting up such matters in avoidance thereof as appellant may be advised are proper.

Costs in this court are taxed against appellant.