# MUTUAL LIFE INSURANCE COMPANY OF NEW YORK v. COHEN.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 157. Argued March 14, 15, 1900. — Decided December 3, 1900.

The provision in the statutes of New York that "no life insurance company doing business in the State of New York shall have power to declare forfeited or lapsed any policy hereafter issued or renewed, by reason of non-payment of any annual premium or interest, or any portion thereof, except as hereinafter provided," does not apply to or control such a policy issued by a corporation of New York in another State, in favor of a citizen of the latter State, but is applicable only to business transacted within the State of New York; and in such case the rights of the parties are measured by the terms of the contract.

ON June 10, 1885, the petitioner delivered to Alexander Cohen, in the State of Montana, a life insurance policy for $3000, conditioned upon the annual payment of a premium of $89.61. Upon it the insured paid premiums up to and including June 10, 1892. No subsequent premiums were paid. On September 21, 1897, he died. His wife, Tine Cohen, was the beneficiary named in the policy.

The application commenced in these words: " Application for insurance in the Mutual Life Insurance Company of New York, 140 to 146 Broadway, corner of Liberty street, New York City, subject to the charter of such company and the laws of said State." It further contained this provision: " That if the insurance applied for be granted by the company, the policy, if accepted, will be accepted subject to all the conditions and stipulations contained in the policy." Among those conditions and stipulations was this: " Notice that each and every such payment is due at the date named in the policy is given and accepted by the delivery and acceptance of this policy, and any further notice, required by any statute, is thereby expressly waived."

On November 9, 1898, this action was commenced in the Circuit Court of the United States for the District of Washington.

The single defence was the non-payment of premiums after June 11, 1892. There was no suggestion of rescission, abandonment, knowledge by the beneficiary of the non-payment of the premium, or any refusal or failure on her part in respect to the policy. A demurrer to the answer was sustained, judgment rendered for the amount of the policy, less the unpaid premiums, which judgment was affirmed by the United States Circuit Court of Appeals for the Ninth Circuit, 38 C. C. A. 696, and thereupon the case was brought here on certiorari.

*Mr. Julien T. Davies* and *Mr. John B. Allen* for the Mutual Life Insurance Company. *Mr. Edward Lyman Short, Mr. Frederick D. McKenney* and *Mr. Robert C. Strudwick* were on their brief.

*Mr. S. Warburton* and *Mr. Harold Preston* for Cohen.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

*Mutual Life Insurance Company* v. *Phinney*, 178 U. S. 327, was an action against the same insurance company, in the same district, on a policy like the one in controversy here, save that in that the insured was himself the beneficiary. It resulted in a judgment in the Circuit Court against the company. Thereupon the company sought to transfer it by writ of error to the Court of Appeals of that circuit, but that court dismissed the writ of error. Thereafter, on April 19, 1897, a certiorari was issued by this court. 166 U. S. 721. On examination we held that the Court of Appeals erred in dismissing the writ of error, that it had jurisdiction, and that it ought to have reversed the judgment of the Circuit Court. The decision was based on the ground of error in the ruling of the Circuit Court in respect to rescission and abandonment. In the opinion we referred to the fact that there was a primary question of the applicability of a statute of the State of New York, but deemed it unnecessary to decide it. That decision was followed by the cases of the same company against *Sears*, 178 U. S. 345 ; against *Hill*, 178 U. S. 347 ; against *Allen*, 178 U. S. 351. All of which cases were disposed of in like manner.

The primary question noticed but not decided in those cases is distinctly and solely presented in this.

The insurance policy contained a stipulation that it should not be binding until the first premium had been paid and the policy delivered. The premium was paid and the policy delivered in the State of Montana. Under those circumstances, under the general rule, the contract was a Montana contract, and governed by the laws of that State. *Equitable Life Assurance Society* v. *Clements*, 140 U. S. 226, 232. In that State, there being no statutory provisions to the contrary, the failure to pay the annual premium worked, in accord with the terms of the policy, a forfeiture of all claims against the company.

New York, on the other hand, the State by which the insurance company was chartered and in which it had its principal office, by section 1 of chapter 321 of 1877 had enacted—

" SEC. 1. No life insurance company doing business in the State of New York shall have power to declare forfeited or lapsed any policy hereafter issued or renewed by reason of non-payment of any annual premium or interest, or any portion thereof, except as hereinafter provided."

The provision referred to and which is stated at length in the succeeding part of the section is one for notice of a special kind and to be given in a particular way. The section is quoted in full in 178 U. S. 330.

This notice was not given. Hence, if the law of New York controls, the policy was still in force and the plaintiff was entitled to recover.

The question, therefore, is whether the law of New York controls.

The presumption is in favor of the law of the place of contract. He who asserts the contrary has the burden of proof. The New York statute does not purport to change any insurance company charter. On the contrary, its obvious purpose is only to reach business transacted within the State. Proceeding on the accepted principle that a State may determine the conditions, the meaning and limitations of contracts executed within its borders the language of the statute reaches contracts made within the State. Undoubtedly a foreign insurance company making a contract within the State of New York would find that contract burdened by its provisions, and equally clear is it that such company making a contract in another State would be free from its limitations. There is no indication of an intent on the part of the legislature of New York to affect, even if it were possible, the general powers of a foreign company coming within the State and transacting business. But on the face of the statute there is no express demarcation between foreign and local companies. There is no attempt to say that a foreign company doing business within the State shall, as to such business, be subject to the prescribed limitations, and that a home company doing business within the State and elsewhere shall as to all its business be so limited. If we cannot from the language impute to the legislature an intent to regulate the business of a foreign company outside of the State, how can we

find in such language an intent to prescribe limitations upon the contracts of a home company outside the State? In the absence of an expressed intent it ought not to be presumed that New York intended by this legislation to affect the right of other States to control insurance contracts made within their limits. Can it be that the State of New York, aware of the fact that other States and other countries might by their legislation properly prescribe terms and conditions of insurance contracts, meant by this legislation to restrict its local companies from going into those States and countries and transacting business in compliance with their statutes if in any respect they were found to conflict with the regulations prescribed for business transacted at home?

Again, it is worthy of notice that the State of New York has changed its legislation repeatedly in the last quarter of a century in respect to this very matter of notice. See Laws, 1876, chap. 341, sec. 1; the statute now under consideration, Laws, 1877; Laws, 1892, chap. 690, sec. 92; Laws, 1897, chap. 218, sec. 92. The varying provisions of these statutes, directed in terms, not to local companies but to companies doing business in the State of New York, strengthen the conclusion that the State was not thus changing the several charters of its companies, but prescribing only that which in its judgment from time to time was the proper rule for business transacted within the State.

Again, the terms of the act itself tend in the same direction. It provides for a 30-day notice. While such a notice might be reasonable as to all policies within the State, yet when it is remembered that some at least of the New York insurance companies are doing business in all quarters of the globe, it is obvious that a 30-day notice in many cases would be of little value.

Further, by section 2 the statute provides that an affidavit by one authorized to mail the notice shall be " presumptive evidence " of the giving of the notice. Can it be supposed that the legislature of New York was contemplating a rule of evidence to be enforced in every state and nation of the world?

These considerations lead to the conclusion that the statute of

New York, directed as it is to companies doing business within the State, was intended to be, and is, in fact, applicable only to business transacted within that State.

It is not doubted that a contract by an insurance company of New York executed elsewhere may by its terms incorporate the law of New York, and make its provisions controlling upon both the insured and the insurer. And it is urged that, although there is nothing in the policy to indicate this, the language of the application has that effect. It recites that it is "subject to the charter of such company and the laws of said State;" and the contract refers to the application, and declares that it is issued "in consideration of the application for this policy and of the truth of the several statements made therein." While the contract is based upon the application, yet the latter is only a preliminary instrument, a proposal on the part of the insured, and a stipulation that it shall be controlled by the charter and the laws of the State is not tantamount to a stipulation that the policy issued thereon shall also in like manner be controlled. That such language was incorporated into the application is not strange. Its meaning is clear, and is that no local statute as to the effect of statements or representations or any other matter in the application should in these respects override the provisions of the charter and the laws of New York. In other words, if by the charter or the laws of New York any statement in an application is to be taken as a warranty, no local statute declaring that all statements in an application are to be taken as simply representations shall override the terms of the charter and the New York law. But that is very different from a provision that the contract issued upon such application should also be in all its respects controlled by the laws of New York.

Further, it may be noticed that even if the language justifies a broader construction, it may well mean that only such laws of the State of New York as are intended to and do change the charters of the companies or are intended to have extraterritorial application should be considered a part of the policy.

The stipulation in this policy is different from that presented to the Court of Appeals of New York in *Baxter* v. *Brooklyn*

*Life Ins. Company*, 119 N. Y. 450, 454, which was that it was
" a contract made and to be executed in the State of New York,
and construed only according to the laws of that State." There
was a direct provision in respect to the contract itself, and thus
incorporated those laws into its terms.

While authorities on this particular question are not numer-
ous, we may properly refer to an opinion of the Supreme Court
of Washington, the State in which this action was brought,
*Griesemer* v. *Mutual Life Insurance Company*, 10 Washington,
202, in which, referring to this special question, and the con-
tention that this very statute of the State of New York became
a part of the contract of the company in the State of Washing-
ton, the court said, on pages 206, 207 :

" It is claimed on the part of the plaintiff that upon its en-
actment it became attached to the defendant, it being a corpo-
ration organized under the laws of New York, and effected a
change in its charter ; so that every policy thereafter issued by
it, whether in the State of New York or elsewhere, became sub-
ject to its provisions. On the other hand, it is claimed by the
defendant that it only affected policies issued to, or held by,
residents of the State of New York ; that the evident object of
its enactment was to protect such residents ; that to give it a
broader effect would be to convict the legislature of having dis-
criminated against life insurance companies organized under the
laws of the State.

" We are unable to construe the law in accordance with the
contention of either party. The construction contended for by
the defendant is too narrow. The language used is, that ' No
life insurance company doing business in the State of New York
shall have power to declare forfeited or lapsed any policy.
. . .' This language, construed in its ordinary sense, seems
to preclude such a narrow construction. Beside, if it were war-
ranted by the language, it would not be reasonable to suppose
that the legislature intended to so limit the effect of the stat-
ute. If it had so intended, it would have made use of language
which in some manner confined the rights to be affected by the
statute to residents of the State, instead of to companies doing
business therein. While the construction contended for by the

plaintiff, seems to be equally untenable, for the reason that it would convict the legislature of having sought to accomplish something not in its power. So construed the act would apply to all policies of any company which should do business in the State of New York, wherever issued, regardless of the question as to whether or not it was organized under its laws. That the legislature of New York could not control companies not organized under its laws as to their business transacted in other States is too clear for argument. Hence the construction contended for by respondent would convict the legislature of having attempted that which it could not do, or of having deliberately discriminated against its own companies.

" In our opinion the reasonable and ordinary construction of the language used in the statute is such as to make it applicable to business done in the State of New York; and that the question as to whether or not the companies doing such business were organized under its laws, or those of some other State, has no influence upon the question as to whether or not the statute is applicable. This construction is justified by the language used, and will give force to every word, while the other will not do so. And since the well-settled rule as to construction of statutes requires every word to be given force if possible, it follows that the limitations of the act are impressed upon all policies issued in the State of New York by either domestic or foreign companies, and that it has no application to policies not issued therein, even although the companies issuing them were organized under its laws."

The New York cases cited by counsel throw no light on the question. *Baxter* v. *Brooklyn Life Ins. Co.*, 119 N. Y. 450, contained in the contract, as heretofore stated, an express stipulation of the controlling law. In *Carter* v. *Brooklyn Life Ins. Co.*, 110 N. Y. 15, the question was as to the significance of the word "renewed" in the section referred to, and it does not appear where the policy was issued. In *Phelan* v. *Northwestern Mutual Life Ins. Co.*, 113 N. Y. 147, the statute was held applicable to a foreign insurance company doing business in the State of New York, the notice given was held insufficient, and no question was considered as to the scope of the statute other-

wise. *De Frece* v. *National Life Ins. Co.*, 136 N. Y. 144, was likewise an action against a foreign insurance company, and involved no question like that before us. *Rae's Executors* v. *National Life Ins. Co.*, 20 U. S. App. 410, was also an action against a foreign insurance company, and the question was simply as to the sufficiency of the notice.

We conclude, therefore, that the statute of the State of New York does not under the circumstances presented control, and that the rights of the parties are measured alone by the terms of the contract. The insured having failed to pay the premium for years before his death, the policy was forfeited.

> *The judgment of the Circuit Court of Appeals will be reversed and the case remanded to the Circuit Court of the United States for the District of Washington, with instructions to set aside the judgment and overrule the demurrer.*

MR. JUSTICE MCKENNA dissented.

MR. JUSTICE PECKHAM took no part in the decision of this case.