(36 South. 790.)

No. 14,574.

GREVENIG v. WASHINGTON LIFE INS. CO. OF NEW YORK.

(June 8, 1903.)

LIFE INSURANCE — POLICY — EVIDENCE — DE-
FAULT ON PREMIUMS—NOTICE—FOR-
FEITURE—PLACE OF CONTRACT.

1. Where a policy of insurance appears as one large sheet of paper, embracing four pages, on one page of which is the main contract, on another are certain printed conditions and agreements, on another a copy of the application for the policy and certain acknowledgments and agreements of the applicant, and on the fourth the usual endorsement indicating that the folded paper contains a policy on the life of the assured (naming him), etc.—the main contract referring in terms to the conditions and agreements and to the application—the entire sheet of four pages and the contents of same will be considered the policy.

2. And when the plaintiff offers the policy in evidence without reservation, producing the sheet and having the same marked "filed in evidence," everything on the four pages will be considered embraced in the offering.

3. The defense of forfeiture of the policy of life insurance sued on, because of non-payment of the four annual premiums preceding the death of the assured, is sustained under the facts and circumstances presented.

On Rehearing.

4. The statute of New York providing that no life insurance company doing business in that state shall declare forfeited or lapsed any policy for non-payment of premiums, except after the special notices provided therein, is not applicable to business transacted in another state.

5. Where a citizen of the state of Louisiana made application through a local agent for a policy of life insurance to be issued by a New York Company, the application stating that the policy should not be binding until the premium should be paid to the company or its duly authorized agent, and a policy was executed in New York pursuant to the application, and forwarded to the local agent in New Orleans, who collected the premium, countersigned the receipt, and delivered the policy to the assured, *held*, that the contract was perfected in the state of Louisiana, and was governed by the laws of that state, and not by the laws of the state of New York. Mutual Life Ins. Co. v. Cohen, 21 Sup. Ct. 106, 179 U. S. 262, 45 L. Ed. 181; Equitable Life Assur. Soc. v. Clements, 11 Sup. Ct. 822, 140 U. S. 226, 35 L. Ed. 497; May on Insurance, § 66.

6. Under the express terms of the policy, the neglect to pay four annual premiums rendered the contract null and void.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Elizabeth S. Grevenig against the Washington Life Insurance Company of New York. Judgment for defendant, and plaintiff appeals. Affirmed.

James J. McLoughlin and Frank McGloin, for appellant. Merrick & Lewis and Philip Gensler, Jr., for appellee.

BLANCHARD, J. On the 20th of December, 1894, Louis C. Grevenig applied in writing for insurance on his life in defendant company, in the sum of $5,000.00 on the 20 year endowment plan.

The application was made in the State of Louisiana, where Grevenig lived, to T. J. Cocke, agent in Louisiana of the company.

Among the stipulations contained in the application was one reciting that "neglect to pay the premium on or before the day it became due, will render the policy null and void and forfeit all payments made thereon."

Another stipulation recited "that the policy of insurance hereby applied for shall not be binding upon this company until the amount of premium as stated therein shall be received by said company, or some authorized agent thereof, during the lifetime of the party therein insured."

Cocke, the Louisiana agent of the company, forwarded the application to the home office in New York, and the company, accepting the same, wrote its policy of insurance in accordance therewith, dated December 24, 1894, on the life of Grevenig, and sent the same to Cocke in Louisiana who there delivered it to Grevenig.

Grevenig paid the first premium in Louisiana, presumably at the time of the delivery of the policy to him.

The fact of its payment in Louisiana is shown by the receipt, across the face of which, in red ink, is written "countersigned by T. J. Cocke, agent," and on the margin, in red ink, appears the words "Agency receipt."

Cocke, who is thus shown to have received the premium, was in Louisiana, and there was no necessity for his countersigning the receipt if he had not received in Louisiana the premium paid.

Had it been paid to the company in New York, there would have been no need for Cocke's signature at all.

Grevenig paid two other premiums on the policy—the one due December 24, 1895, and the one due December 24, 1896.

These premiums were paid in Louisiana to Cocke, agent, and the receipts therefor are countersigned by him, and both bear the legend "Agency receipt."

Each of the three receipts contain a stipulation as follows:—"This receipt to be valid must be countersigned by the agent on receiving the premium."

So Cocke, receiving the premiums in Louisiana, complied with this stipulation by countersigning the receipts.

After paying three premiums, and some six weeks prior to the fourth premium falling due, Grevenig, to whom the policy was made payable, assigned the same to his mother, Mrs. Elizabeth Grevenig.

The fourth premium on the policy—the one due December 24, 1897—was not paid, nor was any subsequent premium paid.

Grevenig died December 30, 1900.

At the date of his death there had been default on four premiums on the policy. That is to say, the premiums that should have been paid thereon December 24, 1897, 1898, 1899 and 1900 had not been paid.

Following his death, his mother, the assignee of the policy, treating the same as still in force, brought the present action against the company seeking to recover the full amount of the policy.

The company defends on the ground of the forfeiture and lapsing of the policy by reason of the non-payment of the premiums due thereon.

There was judgment below for the defendant and plaintiff appeals.

*Ruling*—The policy of insurance in question was annexed to and made part of plaintiff's petition, and when it came to the offering of evidence, plaintiff's counsel offered in evidence "the policy of life insurance sued on in this case, No. 89,618."

The number given is that of the policy.

This policy, as annexed to the petition and offered in evidence, appears as one large sheet of paper, embracing four pages. On the first page is the main contract of insurance, wherein is recited that the policy is issued in consideration of the representations made in the application for the policy and the payment of the first premium and those thereafter to fall due; and wherein it is further recited that the policy is issued and accepted by the assured upon the conditions and agreements printed by the company on the inside of the policy, which conditions and agreements are accepted by the assured as part of the contract, and to them is given the same force and effect as if printed in full over the signatures which appear on the first page, or at the foot of the main contract.

On the second page of the policy, which would be one of the inner pages, we find under the heading "Conditions and agreements referred to and forming part of this policy" certain printed stipulations not now necessary to refer to.

Then on the second inner page, which would be the third page of the sheet, we find under the heading "Copy of application for this policy" a copy of the application, which contains not only the questions and answers usual to be asked and given in such applications, but also certain acknowledgments and agreements on part of the applicant—the whole over his signature.

Then on the fourth page of the sheet—the last and outside page—we find this endorsement:—

"No. 89,618.

"Washington Life Insurance Co.

Age                              Amount
32                              $5,000.00
"Date December 24, 1894.
"Policy payable at death, or 52 payments, $244.85.
"Payments due on the 24th day of December annually."

We hold that "the policy" of insurance issued in this manner and form to Grevenig included what was written and printed on the four pages, and when the offer was made of "the policy" in evidence by plaintiff's counsel, without reservation, it carried everything on the four pages. Thereafter it was not necessary for defendant's counsel to offer specially the copy of application for the policy in order to get it before the court.

Both in the main contract of insurance and in the application which is made part of the policy, the continued life of the policy is made dependent on the payment of the annual premiums.

The policy stipulates for the lapsing and forfeiture of the contract by reason of the non-payment of the premiums.

The evidence establishes the lapsing of the policy. The officials of the company give as the date of this lapsing the 24th of December, 1897, which was the date for the payment of the fourth annual premium.

There is no contention on part of the plaintiff that the December 1897 premium was paid, nor that any premium subsequent thereto was paid or tendered.

Not only were the four annual premiums preceding the death of the assured not paid, but no effort seems to have been made to pay them, nor to save the forfeiture, nor to set aside the forfeiture after the same was apparently accomplished.

The premiums were not paid, and Grevenig and his mother, with whom he lived, and to whom he had assigned the policy, appear to have accepted the situation—doing nothing towards looking after the policy and keeping it alive. Evidently they considered it lapsed, for they seem to have made no inquiries concerning it, nor any longer bothered themselves with it or about it.

Not until the son's death does the mother appear to have concerned herself with it, and while she and the assured quietly stood still and permitted four years to elapse without paying or offering to pay premiums, and permitted the company to mark the policy off its books as a policy lapsed, she now seeks to have it decreed no forfeiture had occurred and that the policy is still in force.

Her contention is that notice of the falling due of the premiums was not given and because of this lack of notice forfeiture could not be declared by the company.

We find nothing in the policy requiring such notice, and no statute of Louisiana is cited requiring the same.

But it is claimed that by the insurance laws of the state of New York, the domicile of the company, such notice is required, and that the policy by its terms refers to these laws, and, hence, they are to be considered as incorporated in the contract and control it.

We find no general reference in the policy to the insurance laws of New York, and making the same part thereof.

We do find a special reference to section 88 of chapter 690, p. 1969 (as we understand it) of the laws of New York, passed in 1892, but this section, which is recited in the policy, relates only to the surrender value of lapsed or forfeited policies, and in no wise refers to notices to be given of the falling due of premiums, or requires such notice. There is no reference, general or special, to any statute of New York relating to the giving of notice and requiring the same as a

condition precedent to the lapsing of the policy of insurance.

Under these circumstances the case comes within the rule applied in the Mutual Life Insurance Company v. Cohen, 179 U. S. 262, 21 Sup. Ct. 106, 45 L. Ed. 181.

In that case the insurer was a New York company; the assured a resident of Montana.

So in the case at bar the insurer was a New York company, the assured a resident of Louisiana.

In the Cohen Case, the policy was written in New York, but delivered in Montana, where the premium was paid.

In the case under consideration the policy was written in New York, but delivered in Louisiana, where the first and subsequent premiums were paid.

*Held*, in the Cohen Case, that "under those circumstances, under the general rule, the contract was a Montana contract, and governed by the laws of that State." Citing Equitable Life Assurance Society v. Clements, 140 U. S. 226, 232, 11 Sup. Ct. 822, 35 L. Ed. 497.

"In that State," continued the court, "there being no statutory provision to the contrary, the failure to pay the premium worked, in accord with the terms of the policy, a forfeiture of the claims against the company." See, also, Iowa Life Ins. Co. v. Lewis, 187 U. S. 347, 23 Sup. Ct. 126, 47 L. Ed. 204.

Then addressing itself to the contention that the law of New York, where the policy was written, *required notice of maturity of premiums* to be given before a forfeiture could be declared, the court in the Cohen Case continued:—

"This notice was not given. Hence, if the law of New York controls, the policy was still in force and the plaintiff was entitled to recover."

A discussion then follows as to whether the law of New York controlled, and it was held it did not, since the policy of insurance did not, by its terms, incorporate the law of that State relative to notice and make its provisions in that respect controlling upon the assured and insurer.

The ruling of the court on the point is summed up in the syllabus of the case as follows:—

"The provision in the statutes of New York that 'no life insurance company doing business in the State of New York shall have power to declare forfeited or lapsed any policy hereafter issued or renewed, by reason of non-payment of any annual premium or interest, or any portion thereof, except as hereinafter provided,' does not apply to or control such a policy issued by a corporation of New York in another State, in favor of a citizen of the latter State, but is applicable only to business transacted within the State of New York; and in such case the rights of the parties are measured by the terms of the contract."

But the plaintiff insists that even if the policy evidence a Louisiana contract, still was the company compelled to send out notices of the falling due of premiums since it had adopted the custom to do so in its dealings with its policy-holders in Louisiana, and without such notice the policy did not lapse and its forfeiture could not be legally declared.

Evidence to show such a custom was objected to by defendant because not alleged in the petition. It was, however, admitted by the trial judge.

Waiving the objection thus made, we think it reasonably established by the evidence that notice of the falling due of the premium which matured in December 1897 was sent out. It was the failure to pay this premium that caused the policy to lapse.

The assignment of the policy to the plaintiff was made in November 1897. The paper witnessing the assignment was produced and filed in evidence by the plaintiff.

It names Mrs. Grevenig, mother of the in-

sured, as the assignee and gives her only address as "New Orleans, La."

Supposing, then, that notice of the maturity of the premiums was necessary to be sent her, such a notice addressed to her as of New Orleans, La. (since that was the only address given) and mailed sufficed.

That she did not get the notice would make no difference. She testifies she received no notice, and that is the only evidence in the record tending to show notice was not sent.

She was testifying in 1902, about four and a half years after the time when the notice was sent, or was due to be sent.

The custom of the company to send out notices of the falling due of premiums to those persons living in Louisiana who held its policies is abundantly shown, and this, too, by witnesses called by the plaintiff.·

Cocke, as we have seen, was the agent in New Orleans of the company at the time the policy on Grevenig's life was taken out, and remained its agent until April 1897. Afterwards Henderson's Son & Co. became the agents.

Both Cocke and W. H. Henderson, of the firm of that name, testify to the invariable rule of the company to send out the notices. Indeed, they testify that two notices were always sent—one about thirty days prior to the maturity of the premium and one later.

It is also shown that when there had been an assignment of a policy these notices were invariably sent to the assignee.

Other witnesses—themselves policy holders in defendant company in New Orleans—testified to receiving, always, in advance of the maturity of the premiums on their policies, notices of the falling due of the premiums.

The establishment by the testimony of the invariable custom to send out these notices leaves no room for reasonable doubt that the custom was followed in the case of Grevenig, or his assignee, who lived in the same house with him for three years before he died.

Besides, it is shown that a member of the firm of Henderson's Son & Co., plaintiff's agents at the time of the failure of payment of the December 1897 premium, was sent to see Grevenig personally about his failure to pay the premium, and had repeated interviews with him on the subject, and still the premium was not paid.

And following this both Grevenig and his mother—his assignee—did absolutely nothing to restore the policy and maintain it as an existing contract of insurance, though the insured lived three or four years subsequent to the time when the December 1897 premium should have been paid.

We have reserved until now notice of an objection made by plaintiff's counsel to certain evidence, which objection is insisted on.

The objection was to testimony showing that the policy of insurance was delivered to Grevenig in Louisiana, and that the premiums were paid to the company's manager in that State. The ground of the objection was that it was an attempt to contradict the written contract by parol.

The trial judge did not err in overruling the objection. The testimony contradicted nothing in the policy. The statement in the policy that the premium was paid was but confirmed by the testimony objected to, which shows it was paid in Louisiana at the time the policy was handed the insured. It was this payment of the premium and the delivery of the policy to the insured that completed the contract in this instance. Such was the evident contemplation and intention of the parties.

Finally, it is insisted by the plaintiff that even if the policy did lapse, it had, by reason of the fact that three premiums had been paid, a cash value of $465.00, which amount plaintiff should be decreed to recover.

There is no merit in this contention. Grevenig accepted a policy which stipulated he could do one of two things in case there was a default in the payment of the premium. He could take paid-up insurance "on a

demand made with a surrender of the policy within six months after such lapse or forfeiture," or the policy could be continued in force on a certain reserve on the premiums paid being used to carry it at its full amount so long as the reserve taken as a single premium would purchase temporary insurance for such amount, "as shall have been agreed upon in the application or policy."

The plaintiff in the application agreed to take paid-up insurance on the terms stated. That is, he agreed to surrender his policy within six months of the lapse or forfeiture and take paid-up insurance for an amount predicated on the payments he had made. He did not surrender the policy, nor did he even apply for the paid-up insurance. The same is true of his assignee.

Judgment affirmed.

## On Rehearing.

### (June 6, 1904.)

LAND, J. Plaintiff's right to recover is dependent on her maintaining the contention that the policy sued on was in full force and effect when the assured died, on December 30, 1900. The policy was issued on December 24, 1894, and was assigned to plaintiff on November 16, 1897.

The initial premium and the annual premiums maturing in 1895 and 1896 were paid. No other premiums were paid.

Plaintiff admits that she paid none, but testified that she received no notices that the premiums were to become due or were in arrears.

Hence her case rests on the assumption that the policy continued in force, though no premiums were paid after the year 1896.

Under the terms of the policy sued on, it was rendered null and void by the neglect to pay the premiums as they became due, and it was further stipulated that the policy should not be binding on the company "Until the amount of premium as stated therein shall be received by said company or some authorized Agent thereof, during the lifetime of the Party therein assured."

Hence the mere execution of the policy in the state of New York did not bind the company, and the contract was perfected by the payment of the initial premium by the assured to an agent of the company in the state of Louisiana.

The receipt covering the first premium stated that "this receipt to be valid must be countersigned by the agent receiving the premium," and it was countersigned by the agent in New Orleans.

The New York insurance laws provide that no life insurance company doing business in the state of New York shall have the power to declare forfeited or lapsed any policy hereafter issued or renewed by reason of nonpayment of any annual premium or interest, or of any portion thereof, except as specially provided therein.

The provision referred to requires written or printed notice, stating amount of premium or interest due, the place of payment, and the person to whom payable, to be mailed to the address of the assured or the assignee.

In the case of Insurance Co. v. Cohen, 179 U. S. 262, 21 Sup. Ct. 106, 45 L. Ed. 181, the court held that the statute of New York does not apply to a policy issued by a corporation of New York in another state, in favor of a citizen of the latter state, but is applicable only to business transacted in the state of New York.

The court said:

"The insurance policy contained a stipulation that it should not be binding until the first premium had been paid and the policy delivered. The premium was paid and the policy delivered in the state of Montana. Under these circumstances, under the general rule, the contract was a Montana contract, and governed by the laws of the state."

After discussing the insurance statute of New York, the court further said:

"These considerations lead to the conclusion that the statute of New York, directed as it is to companies doing business within the state, was intended to be, and is in fact, applicable only to business transacted within that state."

The Supreme Court of the United States decided the Cohen Case on two propositions of law, to wit, first, that the place of the contract was where the premium was paid and the policy delivered; and, secondly, that the New York statute had no application to business transacted out of that state. Citing Assurance Society v. Clements, 140 U. S. 226, 11 Sup. Ct. 822, 35 L. Ed. 497, as to the place of the contract.

May on Insurance says: "And if the policy be sent to the agent for delivery on receipt of the premium the contract is completed at the agency." Id. § 66.

The policy sued on was a Louisiana contract, since by its terms it was not binding on the company until the premium was received and the premium was paid to its agent in Louisiana, who thereupon countersigned the receipt and delivered the policy to the assured.

It is therefore ordered, adjudged, and decreed that our former judgment rendered herein be reinstated as the decree of the court.