(99 South. 871)

No. 24267.

### COCI v. NEW YORK LIFE INS. CO.

(Feb. 25, 1924. Rehearing Denied by Division B April 30, 1924.)

*(Syllabus by Editorial Staff.)*

**1. Insurance ⬅142—Acceptance of notes by agent for first premium held ratified.**

Agent's action in taking notes payable to himself individually for first premium was ratified by acceptance by company of premium from him and issuance of policy thereon.

**2. Insurance ⬅136(2) — Delivery of policy complete on mailing thereof.**

Where insured was in good health when policy was mailed from home office, but not when received by agent nor delivered to him, delivery of policy *held* complete on mailing thereof.

**3. Insurance ⬅125(2)—Where contract complete by delivery of policy in Louisiana, it is a Louisiana contract.**

Where insurance contract is to be completed in Louisiana by delivery of policy on payment of premium, it is a Louisiana contract.

---

[1] 27 South. 1030.

Appeal from Civil District Court, Parish of Orleans, Wynne G. Rogers, Judge.

Action by Mrs. Rose Coci against the New York Life Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Richard B. Montgomery, of New Orleans, for appellant.

Edgar M. Cahn, Wm. F. Conkerton, Henry B. Curtis, and Luther E. Hall, Jr., all of New Orleans, for appellee.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

THOMPSON, J. This is a suit on a life policy for $3,000, issued by the New York Life Inurance Company on the life of Sebastian Coci, and in which the plaintiff, the wife of the insured, was named beneficiary.

The defense is a denial of any liability because of the nonpayment of the first premium in advance and because of the illness of the insured at the time of the delivery of the policy, which under the agreement of the insured avoided or prevented said insurance from becoming effective.

It is further alleged by way of elaboration that the possession of the policy was obtained by fraudulent misrepresentations and concealments, and that when respondent discovered the same it elected to rescind the contract and restore the status quo by tendering back the premium it had received.

The case was tried by jury, and from a judgment approving the verdict of the jury in plaintiff's favor the defendant appeals.

The facts as they appear from the record are substantially as follows: On November 14, 1918, Sebastian Coci, through defendant's local agent in this city, made application to the defendant for a policy of $2,000. In payment of the first premium the agent accepted the notes of Coci payable at a future date to the order of the agent individually. The application, together with the report of the medical examination and the amount of the premium less the agent's commission, was forwarded to the company, approved by the company, and a policy issued on November 19, 1918, and which in due course was delivered to the insured. There was never, any question raised by the company as to the manner of settlement or payment of the first premium. At the instance and solicitation of defendant's agent, Coci made application for additional insurance or a second policy, the one here in contest.

This application was antedated at the agent's suggestion so as to come under the first, and to avoid a second, medical examination. The first premium on this second policy was paid in the same manner as the premium on the first policy—that is to say, the agent accepted the insured's notes and settled the premium with the company. The application was accepted and approved by the company and the policy was issued bearing date December 10, 1918, but made effective as of November 14 of that year.

The policy was mailed from the home office on December 11 addressed to the branch office in this city and reached the latter office on December 14. It was delivered by the local agent to a representative of the insured on Monday, December 16. On the day before (Sunday, the 15th) Coci, suffering from double lobar pneumonia, was taken to Hotel Dieu, where he died on the following Wednesday, December 18.

On proper proofs of death the company paid the $2,000 policy, but declined to pay the second policy for the reasons set forth as a defense herein.

Much of the brief of defendant's able counsel is taken up with a discussion of the failure of the payment by the insured of the advance premium, it being contended that the agent was without authority to accept notes, and that the transaction as between the agent and insured was not binding on the

company. We do not find any such defense raised in the pleadings.

[1] On the contrary, the petition alleges the payment of the first premium in advance and its acknowledgment in the policy, and this averment is expressly admitted in the answer. But, aside from this, the action of the agent, following the course pursued with respect to the first policy, and which was approved by the company, was ratified by the company in accepting the amount of the premium from the agent and the issuance of the policy predicated on said payment. The company no longer looked to the insured. The matter of the notes was a question between the agent and the insured, with which the company was not in the least concerned. The insured was never the debtor of the company, but of the agent. The agent had paid the company the advance premium after deducting his commissions, as is shown by the letter of the cashier of the company to its second vice president of date December 20 and by the testimony of the agent. In view of these facts the company cannot be heard to say that the policy never became a contract for lack of payment of the advance premium.

The question of more difficult solution is as to when the contract of insurance became consummated and effective; whether when the policy was mailed at the office in New York December 11, addressed to the local agent in New Orleans, or when actually delivered by the local agent to the agent of the insured on December 16. If actual physical delivery was necessary to put the policy in force, then it never became effective, because at the time of such actual delivery (December 16) the insured was dangerously ill with pneumonia, from which he died two days later. If, however, the contract became a completed contract when the policy was mailed in New York December 11, the insurance then became effective, and the policy was in full force at the date of the death of the insured, for it is clearly established by the evidence that the insured was in good health within the legal meaning of that term as used in the application for the policy on the day the policy was mailed.

The agreement of the insured made the basis of defense is contained in the application, and, as said application is made a part of the contract, and with the policy constitutes the whole contract, we shall insert the stipulation and the pertinent part of the policy:

"I agree as follows: That the insurance hereby applied for shall not take effect unless the first premium is paid and the policy is delivered to and received by me during my lifetime and good health and that unless otherwise agreed in writing, the policy shall then relate back to and take effect as of the date of this application."

The policy:

"This contract is made in consideration of the payment in advance of the sum of $69.72, the receipt of which is hereby acknowledged, constituting the first premium and maintaining this policy to the fourteenth day of May, nineteen hundred and nineteen, and of a like sum on said date and every six calendar months during the life of the insured until premiums for twenty full years in all shall have been paid from the date on which this policy takes effect. This policy takes effect as of the 14th day of November nineteen hundred and eighteen, which day is the anniversary of the policy."

There can be no doubt that the policy, independent of the application, evidences a complete and perfect contract. There were no conditions incorporated in the policy itself and nothing left to be done by either the insurer or the insured to put the contract into effect. The proposal of the insured was accepted, the advance premium was paid, the policy was written as applied for and placed in the mail for delivery to the insured. This was the last act to be performed by either party, unless the stipulation in the application as to condition of health of the insured is to be regarded as a condition precedent,

suspending the contract until actual physical delivery of the policy to the insured.

The general rule, sustained by ample authority, is that:

"Where an application is made for a life policy and a sum of money paid to the agent of the insurer to be applied on the first premium if the insurer decides to issue a policy, the contract is complete on the issuance of the policy and no delivery is essential."

The weight of authority seems to be to the effect that on the acceptance of the application the contract is consummated.

14 Ruling Case Law, p. 898.

"A contract of life insurance is consummated upon the unconditional written acceptance of the application for insurance by the company to which such application is made. Actual delivery of the policy to the insured is not essential to the validity of a contract of life insurance, unless expressly made so by the terms of the contract." New York Life Ins. Co. v. Babcock, 104 Ga. 67, 30 S. E. 273, 42 L. R. A. 88, 69 Am. St. Rep. 134.

It is to be observed that the agreement of the insured contained in the application is silent as to how, when, and in what manner delivery was to be made of the policy. There is nothing in the application nor the policy to indicate that the phrase "delivered to and received by me during my lifetime and good health" meant or was intended to mean an actual physical and personal delivery. And there is nothing in the stipulation to warrant the conclusion that the insured was willing to leave the question of his good health, the delivery of the policy, and the binding effect of his contract to the decision and determination of a third party. The most reasonable interpretation of which the agreement is susceptible is that the insured warranted his good health at the time the contract was to become consummated and binding on both parties, and that must be regarded as having taken place when the policy was issued and mailed without condition, limitation, or restriction.

[2] It was the completion and mailing of the contract that constituted the delivery of the policy within the intendment and meaning of the law. At that time and for nearly a month prior thereto the insured was in good health. This interpretation is sustained by the policy itself and by the action and conduct of the company.

As we have already seen, the policy in express terms was to take effect, not from the date of its issue, but from November 14. That date was made the anniversary of the policy, and it was from that date that the first premium was to maintain the policy in effect for the succeeding 6 months. The insured was entitled to the delivery of the policy on the day the contract was completed and signed. The contract was from that date binding on the assured, and if binding on him it was likewise binding on the company.

The insured could not thereafter have legally repudiated his contract with the company, nor could he have demanded his notes back from the agent. Nor could the company, after mailing the policy, much less after the death of the insured, gainsay the binding effect of the contract. There is and can be no good reason suggested in the absence of special agreement why the binding effect of the contract should be postponed till some future date when the policy could be actually, physically, and personally delivered to the insured. The condition of the health of the insured was not dependent on the delivery of the policy, but the delivery of the policy was dependent on the insured's being in good health at the time delivery was made.

Construing the application and the policy together, our conclusion is that delivery of the policy was made when it was mailed at the home office of the company, and, the insured being in poor health at that time, and the premium having been paid, the policy became effective and was in force at the time of the death of the insured.

In reaching this conclusion we are aware that jurisprudence generally is not in harmony with this holding. There are many jurisdictions that hold a contrary view. We are supported, however, by quite a number of decisions of the highest courts of other states, only a few of which we deem it necessary to refer to. Thus, in New York Life Ins. Co. v. Pike, 51 Colo. 238, 117 Pac. 899, it was held:

"Where an insurance company in its regular course of business accepted, in payment of the first premium, notes given by the applicant with his application, and upon receipt of the application issued a policy before insured's death, the policy was in contemplation of law delivered, though by accident it was not actually turned over to insured before his death.

"The condition that, to take effect, the policy must be delivered during the good health of the insured would not defeat recovery."

In Fidelity Mut. Life Assoc. v. Harris, 94 Tex. 25, 57 S. W. 635, 86 Am. St. Rep. 813, the policy expressly provided that it should not be binding until delivery during the lifetime and good health of the applicant and until the first payment due thereon had been made. The court held that, as the premium accompanied the application, the stipulation in question was one generally used in blank policies to cover cases where the first premium has not been paid when the policy issues, but is to be paid subsequently. The contract was completed and delivery made when the policy was mailed. See, also, State Mut. F. Ins. Co. v. Brinkley, 61 Ark. 1, 31 S. W. 157, 29 L. R. A. 712, 54 Am. St. Rep. 191; Kimbro v. N. Y. Life, 134 Iowa, 84, 108 N. W. 1025, '12 L. R. A. (N. S.) 421; Ins. Co. of N. Y. v. Reid, 21 Colo. App. 143, 121 Pac. 132; New York Life Ins. Co. v. Babcock, 104 Ga. 67, 30 S. E. 273, 42 L. R. A. 88, 69 Am.

St. Rep. 128. See, also, note, 63 L. R. A. 840, 23 L. R. A. (N. S.) 969; 52 L. R. A. (N. S.) 276.

But whatever may be the ruling of the courts in other jurisdictions, we have had occasion to pass upon this question heretofore, and we are not disposed to overrule the conclusion arrived at in that case. In the case of Chapman v. Mutual Life Ins. Co., 146 La. 660, 83 South. 887, the precise question was at issue as the one presented here, and the application contained the same stipulation as to delivery of the policy when the insured was in good health as the one in the application now under consideration, and we held that the contract was consummated and delivery was made as between the insurer and the insured when the policy was placed in the mails addressed to the local agent. We can find no sufficient reason to depart from the ruling in that case, and we reaffirm it.

[3] There is nothing in the cases of Grevenig v. Washington Life Ins. Co., 112 La. 879, 36 South. 790, 104 Am. St. Rep. 474, and Lake Charles v. Equitable Life Ins. Co., 114 La. 836, 38 South. 578, in conflict with the conclusion reached in the instant case. There can be no doubt of the correctness of the rule that where the contract is to be completed in this state by delivery of the policy on payment of the premium the contract is to be regarded as a Louisiana contract, and the insurance is not effective until the premium is paid.

For the reasons assigned, the judgment appealed from is affirmed at the cost of defendant and appellant.

Rehearing denied by Division B, composed of DAWKINS, LAND, and LECHE, JJ.