## CALLAN v. MUTUAL LIFE INS. CO.*
### No. 14217.

Court of Appeal of Louisiana. Orleans.
April 10, 1933.

Spearing & McClendon, of New Orleans, for appellant.

Daniel Wendling, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit by a beneficiary on two policies of industrial life insurance aggregating the sum of $750. It is defended upon the ground that delivery of the policies was not made as required by the following provision, common to both policies:

"This policy is void until the same is actually delivered to the insured in person while in sound health."

As a matter of fact, the policies were never delivered for the reason that when the agent of defendant called at the domicile of the insured he discovered that the insured was dead, having died the day before from causes which do not appear in the record, but were admittedly violent and accidental and not due to illness.

There was judgment below in favor of plaintiff, and defendant has appealed.

The facts are undisputed. On August 14, 1930, at the solicitation of an agent of defendant James Callan applied for two policies aggregating $750 and paid the agent two weeks' premium in advance. No medical examination was undertaken, and on August 23, 1930, the policies were received in the city of New Orleans by the local agent from the home office of the company which is in Baltimore, Md. The manager of the local office handed the policies to the soliciting agent two days later, or August 25, 1930, for delivery to the insured. Three days thereafter or August 28, 1930, the agent called at the insured's residence for the purpose of delivering the policies, when it was discovered that Callan was dead, having died the day before, whereupon the agent returned the policies to the local office.

The sole question, one of law, is the effect of the clause, in the policies, relied upon by defendant.

Plaintiff's case is very largely, if not entirely, pitched upon the authority of Coci v. New York Life Insurance Co., 155 La. 1060, 99 So. 871, 872. In fact, this case is cited in her petition as authority for the proposition that "the mailing or delivery of a policy to an agent constitutes the delivery to the insured," and it is alleged that that decision and other decisions "were written into the policy of insurance issued by the said defendant as much as if printed thereon, by reason of which the said company became obligated to pay petitioner the said sum of $750.00. Said holding of said court is still the settled jurisprudence of today."

Under the circumstances we hasten to an examination of the Coci Case and find it to be an action on a life insurance policy in the sum of $3,000, issued by the New York Life Insurance Company on the life of Sebastian Coci. The policy had been issued following a medical examination of the insured. The application contained the following stipulation:

"That the insurance hereby applied for shall not take effect unless the first premium is paid and the policy is delivered to and received by me during my lifetime and good health."

And in the policy itself we find:

"This policy takes effect as of the 14th day of November nineteen hundred and eighteen [the policy had been issued on December 10th, 1918], which day is the anniversary of the policy."

The policy was mailed in New York December 11, 1918, addressed to its local agent in New Orleans and delivered by the local agent to an agent of the insured on December 16, 1918, on which latter date the insured was dangerously ill with pneumonia from which he died two days later. The question before the court was: When, in view of the stipulation in the application for, and in the policy of insurance, did the policy go into effect? The court held:

"It was the completion and mailing of the contract that constituted the delivery of the policy within the intendment and meaning of the law. At that time and for nearly a month prior thereto the insured was in good health.

"* * * The policy in express terms was to take effect, not from the date of its issue, but from November 14. That date was made the anniversary of the policy, and it was from that date that the first premium was to maintain the policy in effect for the succeeding 6 months. The insured was entitled to the delivery of the policy on the day the contract was completed and signed. The contract was from that date binding on the assured, and if binding on him it was likewise binding on the company."

In discussing the meaning of the phrase "delivered to and received by me during my lifetime and good health," the court declared that there was nothing in that phrase which "meant or was intended to mean an actual physical and personal delivery. And there is nothing in the stipulation to warrant the conclusion that the insured was willing to leave the question of his good health, the delivery of the policy, and the binding effect of his contract to the decision and determination of a third party. The most reasonable interpretation of which the agreement is susceptible is that the insured warranted his good health at the time the contract was to become consummated and binding on both parties, and that must be regarded as having taken place when the policy was issued and mailed without condition, limitation, or restriction."

The court in the Coci Case cited the case of New York Life Insurance Company v. Babcock, 104 Ga. 67, 30 S. E. 273, 42 L. R. A. 88, 69 Am. St. Rep. 134, and in the Georgia case we find the following:

"Actual delivery of the policy to the insured is not essential to the validity of a contract of life insurance, unless expressly made so by the terms of the contract."

Taking up the provision in the policies in the case at bar for the purpose of comparison with the one under consideration in the Coci Case, we find that here the policies stipulate for their suspension "unless the same is actually delivered to the insured in person while in sound health."

The receipt given by the agent at the time of the collection of the premium from Callan, which is in printed form and has been introduced in evidence, contains the following:

"No obligation is incurred by the said company by reason of this payment, unless said application is accepted and a policy delivered to the insured in person, while in sound health, when said payment will apply to the first premium due after said delivery of the policy."

The policies were not to take effect until delivered to the insured in person, while in sound health, and the premium which had been collected was to apply to the first premium due after the policy was delivered. In other words, no premium was due unless and until the policy was delivered in person to the insured, not constructively but actually delivered.

"The service is made in person when the citation and petition are delivered to himself." Article 188, Code of Practice.

In Bouvier, Law Dictionary (Baldwin's Century Ed.) p. 42, col. 2, we find the following:

"Actual—Something real, in opposition to 'constructive'—'existing in fact.'"

"Actual Delivery—Delivery is actual where the bailor makes a manual transfer of the property to the bailee."

In 1 Words and Phrases, First Series, p. 151, we find the following:

"The word 'actual' has a definite and well-understood meaning. It is something real, in opposition to constructive or speculative; something existing in fact. A life insurance policy, requiring proof of 'actual' death before payment, requires actual proof of the death of insured, and the mere presumption of death arising from seven years absence is insufficient. Kelly v. Supreme Council Catholic Mutual Benevolent Association, 61 N. Y. S. 394, 395, 46 App. Div. 79."

The policies under consideration here were what is known as industrial policies issued without medical examination. Act No. 97 of 1908 provides that where a medical examination is not required, if the agent of the company knew or might have ascertained the true condition of the applicant, such knowledge of the agent shall be imputed to the company and the company will be precluded from interposing nay defense on that score. Williams v. Unity Industrial Life, 14 La. App. 680, 130 So. 561.

In Shuff v. Life & Casualty Insurance Company of Tennessee, 164 La. 741, 114 So. 637, 638, the court was considering a policy of industrial life insurance which contained

a clause to the effect that no "obligation is assumed by the company prior to the date hereof, nor unless on said date the insured is alive and in sound health," the defense being that at the time of the issuance of the policy the insured was not in sound health and its delivery affected by collusion between the company's agent and the insured for the purpose of defrauding the company. The facts upon which the defense was based was held by the court to have been established, but on behalf of plaintiff it was contended that the knowledge of the agent for the insurance company concerning the ill health of the insured and his delivery of the policy, nevertheless, constituted a waiver of the provision of the policy relied upon. This argument was held to be unsound in view of another provision of the policy to the effect that agents "are not authorized to make, alter, or discharge contracts or waive forfeitures," and the plaintiff denied recovery in an exhaustive opinion which reviewed the whole subject matter. The court said:

"If the policy in this case had been issued without a medical examination, the Act 97 of 1908 would be very favorable to the plaintiff; for the statute declares that in such cases, if the agent of the company knew, or might have ascertained with reasonable diligence, the true condition of the applicant's health, such knowledge of the agent who wrote the application, or of the collector of the premiums from the insured, shall be imputed as notice to the company, as to the health, habits, or occupation of the insured. See Brown v. Continental Casualty Co., 161 La. 229, 106 So. 464 [45 A. L. R. 1521]."

There is, therefore, a distinction to be made between policies issued with and without medical examinations. This difference would be a good reason for the requirement of actual, personal delivery of the policy to the insured in good health. An opportunity would thus be afforded the company's agent to determine the apparent state of health of the insured. The authorities relied on by plaintiff if we are not mistaken are all concerned with cases where a medical examination had been required.

The clause concerning delivery in the Coci Case differs from the case at bar in that actual, personal delivery was not required; consequently, as pointed out by the court itself, the intention of the parties to the insurance contract considered in the Coci Case was that the contract should be completed when consummated and not, as in this case, suspended until delivered to the insured in good health. We find no objection to a provision of this character upon the ground of public policy and, therefore, see no reason why contracts of insurance with such stipulations should not be enforced. See Cooley, Briefs on Insur-

ance (2d Ed.) vol. 1, p. 669, and p. 662, where we find the following:

"If the delivery is necessary to complete the contract or if the policy contains the condition that it was not to be effective unless delivered to the insured during his life time in good health, there can be no delivery after the death of the insured."

See, also, New York Life Insurance Company v. Rutherford (C. C. A.) 284 F. 707; Weber v. Prudential Insurance Company, 208 Ill. App. 117; McClave v. Mutual Reserve Fund Life Association, 55 N. J. Law, 187, 26 A. 78.

There was some discussion during the argument of the case concerning a possible waiver of the delivery clause in the policies by unreasonable delay. However, we find no reference to this point in the pleadings, and if the question may be raised at this time, which is doubtful, the time consumed in getting the policy ready for delivery, while somewhat more than necessary, was not unreasonable and surely insufficient to amount to a waiver.

Our conclusion is that the policies sued on were not in effect at the time the insured died and, consequently, the beneficiary cannot recover.

For the reasons assigned it is ordered, adjudged, and decreed that the judgment appealed from be, and it is, reversed, and it is now ordered that there be judgment in favor of defendant, dismissing plaintiff's suit at her cost.

Reversed.

---

*Rehearing denied May 8, 1933.