AYRES, Judge.
This is an action by plaintiffs for the recovery of damages to the automobile of one of them and for the recovery of damages resulting from injuries to their respective minor children, arising from a collision between the aforesaid automobile and a car owned and driven at the time by Staff Sergeant James K. McCall, which allegedly carried public liability and property damage insurance issued by the defendants, Travelers Fire Insurance Company and Travelers Indemnity Company. These defendants filed an exception of no cause and of no right of action and there was judgment sustaining the exception and dismissing plaintiffs’ suit as to those defendants, from which the plaintiffs have appealed.
The exception is predicated upon the proposition that neither of the above named defendants at the time of the accident insured McCall against liability for injuries sustained by third persons or for damage to property on account of McCall’s operation or use of his 1950 model Chevrolet driven by him at the time the accident occurred.
The. evidence establishes the issuance of a public liability and property damage insurance policy by Travelers to McCall covering the operation and use of McCall’s *587 aforesaid automobile for a period of one year beginning ¡November 30, 1953, and expiring November 30, 1954. The accident occurred December 4, 1954. Standing alone, it is obvious this circumstance would conclusively dispose of any claim against Travelers. However, there are other facts and circumstances established by the evidence introduced on the trial of the exception as pertains to the question of no right of action deserving of consideration in arriving at a conclusion as to the merits of the exception. After alleging the issuance and execution of the original policy, as stated hereinabove, plaintiffs alleged that said contract of insurance had been renewed and a new policy issued in lieu thereof by the general agent of Travelers, who had forwarded the policy to Pulley-White Insurance Agency, local agent for Travelers in Bossier City, for delivery, and that the policy was being held by said agent for delivery to McCall, pending which the accident occurred. It is, therefore, evident that if plaintiffs are to recover of Travelers they must, of necessity, rely upon a renewal of the aforesaid policy.
Some time before the expiration date of the policy then in effect, the Pulley-White Insurance Agency in Bossier City received from the general agent and general office of the Travelers in New Orleans the policy of insurance dated October 5, 1954, in favor' of McCall covering his automobile, which was clearly intended as a renewal of the policy which was to expire on November 30, 1954. The effective date of the new policy was made to conform with the expiration date of the former policy.
According to the testimony of Mr. A. P. White, one of the partners in the Pulley-White Insurance Agency, this policy remained in the agency’s possession until on or about December 13, 1954, when it was returned to the company and canceled by the Louisiana Insurance Rating Commission. A photostatic copy of this cancellation discloses that the cancellation was requested by the insurer for the reason that the policy “has been declined by the policyholder, returned to our office and is therefore void and of no effect.” This renewal policy had been approved by the Casualty and Surety Division of the Louisiana Insurance Rating Commission, as shown by the auditor’s seal dated October 21, 1954.
On December 7, 1954,.McCall visited the office of the local insurance, agency to advise-them of the accident (of which they already had independent knowledge) and to request information as to his insurance. McCall! was advised that he had no insurance; that his policy had expired on November 30; that he still owed a balance of $23 on the premium of the policy which had expired, which amount he then and there paid; and was, therefore, advised that it would be necessary that he make an application for a new policy. But, since he had experienced an accident, the agency did not represent a company that would issue him a policy. Therefore, his application would have to be for an assigned risk policy, on which he made a deposit of $15 to apply on the premium. Such a policy was procured from the Marquette Casualty Company, with an effective date as of December 9, 1954. This policy never came into McCall’s possession but was retained by the agency. Its expiration date was January 8, 1955, although it was not countersigned by a member of the agency until February 25, 1955, long after its expiration date.
Defendants contend that in the regular course of business, notice of expiration had been forwarded to McCall but the copy of such notice allegedly retained in the agency’s files does not show upon what date this notice was mailed nor is there any other testimony which establishes such time. McCall testified, however, that he could have received this notice but that he had no recollection thereof. The notice itself contains this notation:
“No doubt you will want the policies renewed, but whether you do or not;. please advise.
*588 “If any change is desired, please notify at once.
“Your patronage is appreciated.
Pulley-White Insurance Agency.”
As' a matter of fact, the policy was renewed and was in the possession of Pulley-White Insurance Agency at the time of the accident and was canceled subsequent to the accident for a purported reason that was manifestly’ untrue, as the policy had not been declined by McCall. There is, of course, considerable testimony as to the manner in which the affairs of the insurance agency are ordinarily conducted relative to matters of this kind, but, at best, this procedure is open to considerable question, as is evidenced by the fact that the Marquette policy, although a payment had been made, was never delivered to McCall.
* White attempts to show that McCall’s insurance business was undesirable and unprofitable because of McCall’s military service and instability in location as a reason for withholding the renewal policy. While McCall was in the military service, stationed at Barksdale Field, he had not been transferred but had been located there for five and one-half years. White’s position was different from that of the agency when McCall made his application for the original policy on a form designated “Proposal and Declarations” prepared and forwarded by the agency to the general agent for the issuance of the policy, for on the reverse thereof, under this notation: “This space is to be used as necessary to state any information which may be ‘of value in considering the desirability of a risk”, the agency typed this information:
“Age — 25
“Other Drivers: None
“No Convictions; Accidents or Ar- , rests .
“Note: Mr. McCall is also employed as a ticket seller for the Barksdale Drive In Theatre, which is one of our very good insured.”
White further testified that when this renewal policy was received from the New. Orleans office of the Travelers, - he knew that he was not going to .make any attempt to collect on it or to deliver it 'to McCall. This is most inconsistent with the notice which he says, according to custom, was mailed by his office to McCall, wherein it was stated, in effect, that it would be presumed that McCall would want the policy renewed and requested that if any change was desired the agency be notified, followed by an expression of appreciation of his patronage.
The real reason for the non-delivery of the policy is disclosed in White’s testimony, wherein he says: ■ .
“Q. Now, did you want to deliver this other policy that was in your desk drawer? A. I would have delivered it up until prior to his accident.
“Q. Yes, sir. A. A man don’t buy trouble.
“Q. That’s right. Now, the only reason you didn’t deliver him that policy was because of his accident ? A. Sure.”
Thus, it is revealed that an effort was being made to relieve the insurer of liability on the policy which had been issued by the general agent and forwarded to the agency for delivery. That this was such an attempt to escape ' liability thereon is further substantiated by the fact that soon after McCall appeared at the agency’s office on December 7, the return of the policy did not follow the usual and customary course or procedure but was delivered to and taken up by a representative of defendant’s general agent.
While it is clear that the Pulley-White Insurance Agency was acting as the agent for the Travelers, there was some obligation and responsibility due- to McCall, its customer. In the handling of the original policy -the agency credited McCall for the *589 premium upon which he made a payment and on which he was due a balance on December 7, 1954, which he readily paid. The agency was under an obligation to McCall by reason of this course of conduct. We are not impressed with the contention that the agency had no intention of delivering the policy when it was received from defendants’ general agent. However, if that be true, instead of sending a notice justifying the conclusion that the policy would be renewed, the agency should have notified McCall positively and unequivocably that his insurance would terminate on a certain date and that it would not be renewed, thus affording him an opportunity of getting protection elsewhere, instead of lulling him into a sense of security through the methods pursued.
In Coci v. New York Life Ins. Co., 155 La. 1060, 99 So. 871, it was held that the mailing of a policy by the home office of the insurer to its local agent in New Orleans was a delivery of the policy to the insured. Therefore, the mailing of the renewal policy by the general agent to Travelers’ local agent for delivery was an effective delivery of the policy to the insured, McCall. As pointed out hereinabove, the reasons assigned by the local agent for not making formal delivery of- the policy were withbut foundation in fact as was the reason given by Travelers to the Rating Bureau requesting the formal cancellation of the policy. Had the insurer determined it was 'undesirable to carry this insurance,. the in-' surance could have been terminated and the policy canceled by following the course prescribed therefor in the Insurance Code, LSA-R.S. 22:636, by giving notice to the insured and allowing a limited delay of not less than five days within which time the insured would have had an opportunity to secure insurance elsewhere. That it did not elect to do this or to take any action whatsoever in that regard until subsequent to the accident herein concerned is a circumstance tending to establish the real purpose for the course pursued and undertaken by the insured, that is, a course of non-delivery of a policy in order, if possible, to demonstrate its non-liability thereon- by such nondelivery.
Under the course of conduct pursued by the agency in this case, and, indeed, under the well known and accepted relationship of trust generally existing between a client and his insurance agent, the client, of necessity, must and, therefore, has a right to rely upon his agent, at least, to a limited degree, and most assuredly to the extent that his agent would formally 'deliver his policy placed by the general agent in his possession for that purpose.
Under the aforesaid facts and circumstances as established in the record, no other conclusion could be logically reached but that the renewal policy was constructively and effectively delivered to the insured and that it was in full force and effect prior to, and at the time of the occurrence of, the accident upon which this action is based. The exception of no cause of action was not urged and there was no legal basis established for the exception of no right of action.
Accordingly, it is ordered, adjudged and decreed that the judgment appealed be and: it- is hereby annulled, avoided, reversed and-set aside and the exception of no cause and of no right of action be and it is hereby overruled and this cause is remanded 'to the Honorable, the Twenty-Sixth Judicial ■ District Court in and for Bossier Parish, Louisiana, for further proceedings in accordance with law and consistent with the views herein expressed, the appellees to pay." the costs of the appeal; all other costs to await final determination of the cause.
Reversed and remanded.